OPINION OF THE COURT KRAUSE, Circuit Judge. ■This case arises from the grievous death of State Trooper David Kedra, who was shot and killed by his instructor, then-Corporal Richard Schroeter, during a routine firearms training. Although a long-term veteran of the police force and specifically certified in the safe use of firearms, Schroeter allegedly disregarded each of the steps that he previously acknowledged in writing were required to safely perform a live demonstration of a firearm—skipping over both his own safety check and an independent check by a second person, treating the gun as if it were unloaded instead of loaded, pointing it at a person instead of a safe target, bypassing the required visual and physical inspection before a “trigger pull,” and then pulling the trigger with the gun aimed at Kedra’s chest. JA 31. Appellant brought a civil rights complaint under 42 U.S.C. § 1983 alleging that Schroeter’s conduct had subjected her deceased son to a state-created danger in violation of his Fourteenth Amendment substantive due process rights. But because the complaint did not allege that Schroeter had actual knowledge that there was a bullet in the gun when he fired it at Kedra, the District Court held that Schroeter was entitled to qualified immunity and dismissed the complaint with prejudice. Its reasoning was that the complaint pleaded only an objective theory of deliberate indifference, i.e., what a reasonable official should have known because the risk was so obvious, which was not then-clearly established, and was insufficient to plead the clearly established subjective theory of deliberate indifference, i.e., that Schroeter was actually aware that his conduct carried a substantial risk of serious harm. We agree with the District Court that the objective theory of deliberate indifference was not clearly established at the time of the shooting. However, because obviousness of risk is relevant to proving actual knowledge and the allegations of the complaint here are more than sufficient to support a reasonable inference that Schroeter had such knowledge, we conclude the complaint adequately pleads a state-created danger claim under a then-clearly established theory of liability. We therefore will reverse the District Court’s grant of qualified immunity and remand for further proceedings. I. Background As this is an appeal from a grant of a motion to dismiss, the factual allegations are taken from the complaint and are accepted as true.[1] See Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 642 n.1, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008). David Kedra was a twenty-six-year-old Pennsylvania State Trooper stationed in Montgomery County, Pennsylvania. In September 2014, Kedra was ordered to attend a routine firearm safety training, which included a demonstration of the features and operation of the new model of a State Police-issued handgun. The training was led by then-Corporal Schroeter, a trained firearms instructor who had been a police officer for about twenty years. Before the training, Schroeter acknowledged in writing a list of firearms safety rules for instructors, including that he must always perform a safety check of a gun before using it for training; that he must implement a second check on whether it is loaded by, e.g., having a second person check the gun; that he must treat all guns as if they are loaded; that he must never point the muzzle of a gun at another person; that he must keep his finger off the trigger, unless he opens the gun to verify it is unloaded before pointing it at a safe target and pulling the trigger; and that he must open the gún to visually and physically determine that it is unloaded before ever pulling the trigger. At the training itself, however, Schroeter violated each of these rules when, in the course of explaining the “trigger reset” function on an operational handgun, he bypassed all of the safety checks, failed to physically or visually inspect the gun to ensure it was unloaded, raised the gun to chest level, pointed it directly at Kedra, and pulled the trigger. JA 32. The gún, in fact, was loaded, and it fired a bullet into Kedra’s abdomen at close range, causing Kedra’s death several hours later. Criminal charges were filed by state authorities, eventually resulting in Schroe-ter’s guilty plea in Pennsylvania state court to five counts of reckless endangerment of another person and his retirement from the State Police. In addition, Kedra’s mother, as the representative of her son’s estate, filed a one-count civil complaint against Schroeter in the U.S. District Court for the Eastern District of Pennsylvania, claiming a violation of Kedra’s substantive due process rights to life and liberty under the Fourteenth Amendment, and making the above-referenced factual allegations, including as to Sehroeter’s training and experience, his written ac-knowledgement of the risks and attendant safety protocols, and his guilty plea. Schroeter moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), claiming he was entitled to qualified immunity because “[t]he gravamen of [p]laintiff s [c]omplaint is that ... Schroeter should have known that his firearm posed a substantial risk to those attending his class, not that ... Schroeter actually did know that there was such a risk.” Memorandum of Law in Support of Defendant’s Motion to Dismiss Complaint at 9-10, Kedra v. Schroeter, No. 15-5223 (E.D. Pa. Jan. 6, 2016), ECF No. 5-1. That theory of liability, Schroeter argued, was not then-clearly established and, hence, he was entitled to qualified immunity. Schroe-ter relied in particular on Sanford v. Stiles, 456 F.3d 298, 310 n.13 (3d Cir. 2006) (per curiam), in which we identified as an open question whether “deliberate indifference”—the mental state required for a state-created danger claim like this one— could be demonstrated using an objective test (i.e., merely by pointing to a substantial risk of serious harm that is so obvious that it should have been known), or whether, instead, a plaintiff must show the defendant had actual, subjective knowledge of the risk. The District Court accepted both Schroeter’s premise and conclusion, ruling, first, that Appellant’s complaint did not plead deliberate indifference based on actual knowledge because Appellant conceded she “could not and would not plead that [Schroeter] knew there was a bullet in the gun,” Kedra v. Schroeter, 161 F.Supp.3d 359, 363 (E.D. Pa. 2016), and, second, that in view of Sanford, it was not clearly established that deliberate indifference could exist based only on the risk being “so obvious that it should be known,” id. at 364-65 (quoting Sanford, 456 F.3d at 309). The District' Court acknowledged Appellant’s argument that, by alleging Schroeter .had pleaded guilty to reckless endangerment, Appellant had necessarily pleaded actual knowledge because the mens rea for this offense under Pennsylvania law is “conscious disregard of a known risk of death or great bodily injury to another person.” Kedra, 161 F.Supp.3d at 364 n.5 (quoting Commonwealth v. Klein, 795 A.2d 424, 428 (Pa. Super. Ct. 2002)). However, the District Court- deemed Schroeter’s guilty plea irrelevant on the ground that it would not satisfy the criteria for non-mutual offensive collateral es-toppel.[2] Id. Accordingly, the District Court viewed this case as “presenting] the scenario anticipated but left unresolved by Sanford: a state actor .proceeding despite a patently obvious risk that the actor should have recognized, but without actual knowledge that the risk existed,” and, thus, a theory of deliberate, indifference that was not clearly established as required to defeat qualified immunity. Id. at 364-66. On that basis, the District Court dismissed tfye complaint with, prejudice,[3] Kedra, 161 F.Supp.3d at 365-66, and this timely appeal followed. II. Jurisdiction and Standard of Review The District Court had federal question jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over both - a District- Court’s dismissal under' Fedéral. Rule of Civil Procedure 12(b)(6) and its grant of qualified immunity. Morrow v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013); McLaughlin v. Watson, 271 F.3d 566, 570 (3d Cir. 2001). In reviewing an order of dismissal under Federal Rule of Civil Procedure 12(b)(6), we, like the District Court, must “accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff].” Phillips v. Cty. of Allegheny, 515 F.3d 224, 228, 230 (3d Cir. 2008). III. Discussion The doctrine of qualified immunity shields government officials from civil liability for constitutional violations only if “their actions could reasonably have, been thought consistent with the lights they are alleged to have violated.” Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)., In considering whether qualified immunity attaches, courts perform a two-pronged analysis to determine: (1) “whether the facts that [the] plaintiff has alleged ... make out a violation of a constitutional right,” and (2) “whether the right at issue was ‘clearly established’ at the time of [the] defendant’s alleged misconduct.” Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Here, the District Court disposed of the complaint at the second prong by concluding that because Appellant had not alleged Schroeter’s actual knowledge of a bullet in the chamber, her theory of deliberate indifference was based solely on the objective test we had identified in Sanford as unresolved, so that “the violative nature of Defendant’s alleged conduct ha[d] not been clearly established.” Kedra, 161 F.Supp.3d at 364-66. As a preliminary matter that will inform the scope of our review, we note that by taking this approach, the District Court addressed the “clearly established” ■inquiry only in part. For the question posed by the District Court—whether it was then-clearly established that obviousness of risk untethered from actual knowledge could prove deliberate indifference-goes to whether the plaintiff sufficiently pleaded the elements of a state-created danger claim, as then defined. See Phillips, 515 F.3d at 235, 240-42. In contrast, the clearly established inquiry at the second prong, as we have déscribed it, goes not to whether a plaintiff sufficiently pleaded a constitutional violation (the question ¿nswered at the first prong), but to whether the right allegedly violated— defined in terms of the “particularized” factual context of that case, Anderson, 483 U.S. at 639-40, 107 S.Ct. 3034—was a “clearly established statutory or constitutional right[ ] of which a reasonable [officer] would have known,” Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).[4] Granted, the contours of a given right are necessarily co-exterisive with the scope of conduct that violates that right, so that where it would not be clear to “a Reasonable official ... that what he is doing violates [a] right,” Anderson, 483 U.S. at 640, 107 S.Ct. 3034, the second prong of qualified immunity would not be satisfied regardless of whether the lack of clarity arose from an uncertain theory of liability or from the application of a clearly established theory of liability to a set of facts so novel as to deprive an actor of fair notice of the violative nature of his actions. But where a defendant contends ‘that neither the theory of liability nor the right at issue is clearly established, the reviewing court may need to analyze both to determine conclusively whether the defendant is entitled to qualified immunity. See, e.g., Beers-Capitol, 256 F.3d at 142 n.15 (observing, on the one hand, that the constitutional right as defined by the factual context of that case was clearly established and, " on the other hand, that the “doctrine of deliberate indifference was also clearly established at the relevant-time”). Here, the District Court addressed the “clearly established” .inquiry only in the first sense, determining that the theory of liability was not clearly established. Be-, cause we conclude this was error, we also address the inquiry in the second sense, assessing whether, under the facts of this case, the specific right at issue was clearly established.[5] Thus, first we will undertake a review of relevant substantive due process principles. See infra Section III.A. Second, we will examine whether the complaint sufficiently pleads a violation of Ke-dra’s substantive due process rights under a theory of deliberate indifference that was clearly established. See infra Section III.B. And third, we will consider whether the particular right at issue was clearly established at the relevant time, see infra Section III.C, i.e., “whether the law, as it existed [at the time of the shooting], gave [Schroeter] ‘fair warning’ that [his] actions were unconstitutional” in the particular factual scenario he confronted. Estate of Smith v. Marasco, 430 F.3d 140, 154 (3d Cir. 2005). A. Applicable Legal Principles In asserting her claim under 42 U.S.C. § 1983 for a deprivation of Ke-dra’s rights to life and liberty, Appellant invokes the Due Process Clause, which at its core protects individuals against arbitrary government action. See Cty. of Sacramento v. Lewis, 523 U.S. 833, 845-46, 118 S.Ct 1708, 140 L.Ed.2d 1043 (1998). While “the Due Process Clause does not impose an affirmative obligation on the state 'to protect its citizens,” there is an exception to this general rule that nevertheless holds an officer liable if his conduct exposes an individual to a “state-created danger.”[6] Phillips, 515 F.3d at 235. Such a claim requires proof of four elements: (1) the harm caused was foreseeable and fairly direct; (2) the state official “acted with a degree of culpability that shocks the conscience”; (3) the state and the plaintiff had a relationship such that “the plaintiff was a foreseeáble victim of the defendant’s acts”; and (4) the official affirmatively used his authority “in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger” than had he never acted. Bright v. Westmoreland Cty., 443 F.3d 276, 281 (3d Cir. 2006). Here, the District Court focused, as do the parties on appeal, on. the second element of a state-created danger claim.[7] See Kedra, 161 F.Supp.3d at 363. That is, because “[liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process,” Lewis, 523 U.S. at 849, 118 S.Ct. 1708, government action rises to the level of an actionable constitutional violation only when it is “so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience,” id. at 847, 118 S.Ct. 1708 n.8. The exact level of culpability required to shock the conscience, however, depends on the' circumstances of each case, arid the threshold for liability varies with the state actor’s opportunity to deliberate before taking actiori. Phillips, 515 F.3d at 240-41; see also Lewis, 523 U.S. at 848-54, 118 S.Ct. 1708. We have identified three potential levels of culpability. In “hyperpres-surized enviropment[s] requiring a snap judgment,” an official must actually intend to cause harm in order to be liable. Vargas v. City of Philadelphia, 783 F.3d 962, 973 (3d Cir. 2015) (internal quotation marks omitted). In situations in which the state actor is required to act “in a matter of hours or minutes,” we require that the state actor “disregard a great risk of serious harm.” Sanford, 456 F.3d at 310. And where the actor has time to make an “unhurried judgment! ],” a plaintiff need only allege facts supporting an inference that the official' acted with a mental state of “deliberate indifference.” Id. at 309. As the District Court correctly recognized, see Kedra, 161 F.Supp.3d at 363, because Appellant here alleged that Schroeter had the opportunity to exercise “unhurried judgment! ],” she was required to plead facts in her complaint supporting the inference that Schroeter acted with “deliberate indifference,” which we have described variously as a “conscious disregard of a substantial risk of serious harm,” Vargas, 783 F.3d at 973-74 (brackets and internal quotation marks omitted), or “willful disregard” demonstrated by actions that “evince a willingness to ignore a foreseeable danger or risk,” Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 910 (3d Cir. 1997). While categorically different from “intent to cause harm,” which is the threshold mental state reserved for officials in “hyperpressurized” situations where “snap judgment[s]” may be required, Vargas, 783 F.3d at 973, deliberate indifference “has an elusive quality to it,” Sanford, 456 F.3d at 301, “falling] somewhere between intent, which ‘includes proceeding with knowledge that the .harm is substantially certain to . occur’ and negligence, which involves ‘the mere unreasonable risk of harm to another,’ ” Morse, 132 F.3d at 910 n.10. Here the District Court examined one of the elusive aspects of deliberate indifference with which we and other Courts of Appeals have wrestled over time: whether deliberate indifference in the substantive due process context—as opposed to the Eighth Amendment context—may be satisfied using an objective test or only a subjective “actual knowledge” test. See Kedra, 161 F.Supp.3d at 364-65 (citing Sanford, 456 F.3d at 309 & n.13). In the Eighth Amendment context, the Supreme Court has rejected an objective standard for “deliberate indifference,” i.e., a- standard where liability may be premised on an official’s objective “failure to alleviate a significant risk that he should have perceived but did not,” Farmer v. Brennan, 511 U.S. 825, 838, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), and the Court has instead explicitly required a showing of “subjective culpability,” id. at 843 n.8, 114 S.Ct. 1970, i.e., a showing that “the official kn[ew] of and disregarded] an excessive risk,” id. at 837, 114 S.Ct. 1970. But uncertainty about whether this “subjective culpability” requirement carried over to pretrial detainees and other plaintiffs asserting substantive due process claims produced á split among the Courts of Appeals.[8] That split led u's in Sanford to note, in the substantive due process context, “the possibility that deliberaté indifference' might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known,” 456 F.3d at 309, and to acknowledge shortly thereafter that we “ha[d] not yet definitively answered the question of whether the appropriate standard in a non-Eighth Amendment substantive due process case is subjective or objective,” Kaucher v. Cty. of Bucks, 455 F.3d 418, 430-31 (3d Cir. 2006). More recently, both the Supreme Court and this Court have spoken to the issue. In Kingsley v. Hendrickson, — U.S. —, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), distinguishing between the different language of the Eighth Amendment and the Due Process Clause and the different nature of those claims, the Supreme Court held that a pretrial detainee claiming a substantive due process violation based on excessive force “must show ... only that the officers’ use of that force was objectively unreasonable” and not “that the officers were subjectively aware that their use of force was unreasonable.” Id. at 2470, 2475. While the Court acknowledged that “the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind” because “liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process,” it clarified that this subjective requirement pertained only to “the defendant’s state of mind with respect to his physical acts”—in other-words, his actions themselves needed to be deliberate and not “accidental” or “negligent ]”—but did not pertain to whether the actions the defendant deliberately.took were “unreasonable” or “excessive in relation to [a legitimate] purpose.” Id. at 2472-73 (emphasis omitted). Rejecting the arguments that an objective test would devolve into a negligence standard, id, at 2474, was.not “workable,” id., or would lead to a “flood of claims,” id. at 2476, the Court held that “the defendant’s state of mind with respect to the proper interpretation” of his physical acts should be assessed by an “objective standard,” depending on “the perspective of a reasonable officer on the scene.”[9] Id. at 2472-73. Consistent with this approach, we too recently embraced an objective standard in the context of a substantive due process claim—in particular, for a claim of state-created danger. In L.R. v. School District of Philadelphia, we denied qualified immunity to a teacher who released a kindergartener to a stranger who then abused the child. 836 F.3d 235 (3d Cir. 2016). After reiterating our observation in Sanford that ■ “deliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known,” id. at 246, we held this standard was met by the. allegations in that complaint. Specifically, we held the risk of harm from the teacher’s conduct was “ ‘so obvious’ as to rise to the level of deliberate indifference,” id., and that L.R. had sufficiently pleaded as “a matter of common sense” that the teacher “knew, or should have known, about the risk of his actions,” id. at 245 (emphasis added). Although we indicated that the plaintiff’s allegations also satisfied the subjective standard, id. at 246 (“What is more, ... the fact that [the teacher] asked [the stranger] for her identification illustrates that [the teacher] himself was indeed aware of the risk of harm[.]”), we concluded that “[e]xposing a young child to an obvious danger is the quintessential example of when qualified immunity should not shield a public official from suit,” id. at 250.[10] Seeking to benefit from the trajectory of this case law,[11] Appellant would have us rely on L.R: to conclude an objective standard of deliberate indifférénce was clearly established at the time Schroeter shot Ke-dra and to reverse the District Court on that basis. We reject that invitation, however, because we assess qualified immunity based on the law that was “clearly established at the time an action occurred,” Harlow, 457 U.S. at 818, 102 S.Ct. 2727, while L.R. was not decided until nearly two years after the action at issue in this case. That is, regardless of what may be deemed “clearly established” in the wake of Kingsley and L.R., we must look to the state of the law at the time of shooting. And at that point, as the District Court correctly recognized, it was not yet clearly established whether deliberate indifference in the substantive due process context was governed by an objective or subjective standard. See Kedra, 161 F.Supp.3d at 364-65 (citing Sanford, 456 F.3d at 309 & n.13). The question to which we therefore turn is whether Appellant pleaded deliberate indifference under the subjective test, which was then-clearly established, or under an objective test, which then was not. B. Whether Appellant Pleaded Her Claim Under A Clearly Established Theory of Deliberate Indifference Given the historical ambiguity in our case law, we agree with the District Court that Sehroeter’s arguments might have traction if Appellant had pleaded deliberate indifference based merely on what Schroeter should have known in view of the obviousness of a particular risk. But there’s the rub: That is not what Appellant pleaded. Contrary to the way that Schroe-ter and the District Court characterize it, the complaint here clearly and unmistakably alleges facts that support an inference of actual, subjective knowledge of a substantial risk of lethal harm, and neither the Supreme Court nor we have wavered from the well-established principle, that a plaintiff may plead and prove deliberate indifference in the substantive due process context using this subjective test. In the discussion to follow, we first address whether the complaint pleads deliberate indifference under the clearly established subjective test and then turn to the District Court’s misunderstanding of that test in requiring Appellant to plead knowledge of the certainty of harm instead of knowledge of the substantial risk of harm. 1. Application of the Deliberate Indifference Standard At the pleading stage, courts must “accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.” Phillips, 515 F.3d at 233. Although “[f]actual allegations must be enough' to raise a right to relief above the speculative level,” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), we demand “only enough facts to state a claim to relief that is plausible on its face” and “do not require heightened fact pleading of specifics,” id. at 570, 127 S.Ct. 1955. Determining whether the facts pleaded have “nudged” the claim “across the line from conceivable to plausible” is “a context-specific task that requires the reviewing court to draw on its judicial experience and common- sense.” Ashcroft v. Iqbal, 556 U.S. 662, 679-80, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). To make this assessment on a Rule 12(b)(6) motion, “courts must consider the complaint in its entirety,” Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007), and “determine whether the complaint as a whole contains sufficient factual matter to state a facially plausible claim,” Argueta v. U.S. Immig. & Customs Enf't, 643 F.3d 60, 74 (3d Cir. 2011). “The inquiry, as several Courts of Appeals have recognized, is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.” Tellabs, 551 U.S. at 322-23, 127 S.Ct. 2499. Here, then, the relevant question is whether the complaint, considering all the allegations, pleads sufficient facts to support the inference that when Schroeter pointed his gun at Kedra at close range and deliberately pulled the trigger without even once checking whether the gun was loaded, he acted with subjective deliberate indifference, i.e., actual awareness- of a substantial risk of serious harm, lying' “somewhere between intent ... and negligence.” Morse, 132 F.3d at 910 n.10. A plaintiff can plead deliberate indifference by reference to circumstantial and direct evidencé. See Farmer, 511 U.S. at 842, 114 S.Ct. 1970. Three broad categories of circumstantial evidence are alleged in the complaint, and we have deemed each probative of deliberate indifference in the past: (1) evidence that the risk was obvious or a matter of common sense, (2) evidence that the actor had particular professional training or expertise, and (3) evidence that the actor was expressly advised of the risk of harm and the procedures designed to prevent that harm and proceeded to violate those procedures. First, the complaint points to the obvious risk of harm in pointing the muzzle of a gun at another person and pulling the trigger, while skipping any kind of safety check. Perhaps because it concluded that Appellant pleaded deliberate indifference by relying on only the objective obviousness of risk, the District Court did not acknowledge or discuss the relevance of obviousness of risk to proving actual knowledge of risk. See Kedra, 161 F.Supp.3d at 362-66. But the Supreme Court has long recognized that, even under a subjective test, “the fact that the risk of harm is obvious” is relevant, among other pieces of evidence, to “infer the existence of this subjective state of mind.” Hope v. Pelzer, 536 U.S. 730, 738, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). We, too, have observed that “subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk.”[12] Beers-Capitol, 256 F.3d at 133. For that reason, we have regularly relied on the obviousness of risk as a permissible and highly relevant basis from which to infer actual knowledge-even directing in our Model Civil Jury Instructions that, in assessing deliberate indifference for state-created danger claims, a jury is “entitled to infer from the obviousness of the risk that [the state actor] knew of the risk.” Third Circuit Model Civil Jury Instructions § 4.14 (Mar. 2017). In Kneipp v. Tedder, for example, police officers sent a woman home “unescorted in a visibly intoxicated state in cold weather,” and we reversed a grant of summary judgment in their favor, citing the foreseeable and obvious risk that the woman would later fall down an embankment and suffer'hypothermia. 95 F.3d 1199, 1201-03, 1208-09, 1211 (3d Cir. 1996). In Phillips v. County of Allegheny, 911 dispatchers gave confidential information to a distressed and suspended co-worker concerning the whereabouts of his ex-girlfriend, and we likewise reversed the dismissal of a complaint against the dispatchers because they were “aware that [the co-worker] was distraught over his break up” and they could reasonably foresee that some type of serious harm could result from giving him. the information; hence, the inferences to be drawn from “ordinary common sense” supported the dispatchers’ knowledge of risk. 515 F.3d at 228-29, 241, 246. So too here: The risk of lethal harm when a firearms instructor skips over each of several safety checks designed to ascertain if the gun is unloaded, points the gun at a trainee’s chest, and pulls the trigger is glaringly obvious, and this obviousness supports the inference that the instructor had actual knowledge of the risk of serious harm. Second, the complaint alleges that Schroeter was a specially trained firearms instructor with twenty years of experience. And that training and experience is no less relevant to - Schroeter’s actual knowledge of the substantial risk of harm here than the “medical training” of which we took note for the emergency medical technicians in Rivas v. City of Passaic, 365 F.3d 181, 185, 194-95 (3d Cir. 2004), or the “experience as a teacher in charge of a kindergarten classroom” that we deemed relevant to the teacher’s knowledge of risk in releasing the child, to a stranger in L.R., 836 F.3d at 245;[13] see also MBIA Ins. Corp. v. Royal Indem. Co., 426 F.3d 204, 217 (3d Cir. 2005) (observing that,[1]-even where a risk is “so obvious,” an individual’s prior “experience and knowledge” makes it more likely that he will “realize[]” that risk). Thus, even if, hypothetically, the obviousness of the risk here would not be sufficient to impute actual knowledge to a layperson, the combination of obviousness with Schroeter’s specialized" training and expertise in firearms safety is easily sufficient to give rise to an inference of actual knowledge of risk. Third, the complaint alleges that Schroeter was expressly advised of the lethal risk in handling any operational firearm through the safety rules that he acknowledged in writing and that, as a training instructor, he himself was responsible for teaching to others. Those safety protocols were clear and detailed, requiring that an instructor, prior to demonstrating the use of a firearm, (a) conduct a safety check to ensure the gun was not loaded, (b) implement a second safety check by, e,g., having a second person independently verify the gun is not loaded, (c) always treat the firearm as if it were loaded, (c) point the muzzle only at a safe target, (d) never point the firearm at another person, (e) always keep his finger off the trigger unless firing at a safe target, and (f) before demonstrating a “trigger pull,”'open the gun to visúally and physically confirm it is unloaded. JA 31. The complaint alleges that Schroeter not only ignored these directives but directly contravened each and every one of them. Those allegations— which could be characterized as not merely circumstantial, but even direct, evidence of mens rea—give rise to at least as strong an inference of knowledge of risk as the kindergarten teacher’s knowledge and disregard of school policy concerning the release of children in L.R., 836 F.3d at 240 & n.2, 245, and the 911 dispatchers’ “unauthorized” disclosure of what they knew constituted “confidential information” in Phillips, 515 F.3d at 229, 241. In addition to these three categories of evidence that support an inference of actual knowledge, the complaint also alleges direct evidence, of Schroeter’s mental state in the form of his criminal plea to reckless endangerment. That guilty plea required Schroeter, as a matter of Pennsylvania law, to admit that he “recklessly engage[d] in conduct which plaee[d] another person in danger of death or serious bodily injury,” 18 Pa; Cons. Stat. § 2705, with, the mental state of “conscious[ ] disregard[ ] [of] a substantial and ■unjustifiable risk” of serious harm, 18 Pa. Cons. Stat. § 302(b)(3); see also Klein, 795 A.2d at 427-28. In other words, even assuming Appellant could not invoke “non-mutual offensive collateral estoppel” to seek a judgment based in part on issue preclusion—which was the ground on which the District Court -disregarded the plea,[14] Kedra, 161 F.Supp.3d at 364 n.5— the allegation in the complaint that Schroeter pleaded guilty to these charges reflects a statement by a party-opponent, presumptively admissible at trial, see Fed. R. Evid. 801(d)(2), that Schroeter acted with the requisite, knowledge of-risk. In sum, this is not a case where Appellant’s theory of deliberate indifference devolves to mere, negligence or is based only on what .Schroeter objectively should have known given the obvious risk. Instead, the obviousness of the risk in pointing a gun at a defenseless person and pulling the trigger without undertaking any safety check whatsoever only reinforces the many other allegations of the complaint reflecting Schroeter’s “conscious disregard of a substantial risk of serious harm.” Vargas, 783 F.3d at 973 (brackets and internal quotation marks omitted). “[D]raw[ing] all inferences from the facts alleged in the light most favorable to [Appellant],” Phillips, 515 F.3d at 228, the allegations in Appellant’s complaint are more than sufficient to state a claim for a state-created danger based on actual knowledge of a substantial risk of serious harm—the subjective theory of deliberate indifference that was then-clearly established. See Sanford, 456 F.3d at 309-10 & n.13. 2. The District Court’s Misapprehension of the Culpability Required for Deliberate Indifference The District Court reached the opposite conclusion, relying on the premise that Schroeter’s conduct could not reflect a “conscious disregard of a substantial risk of serious harm,” Vargas, 783 F.3d at 973-74 (brackets and internal quotation marks omitted), unless Schroeter actually knew there was a bullet in the chamber, see Kedra, 161 F.Supp.3d at 363-66. That approach, however, fundamentally misapprehends (1) the relevance of circumstantial evidence to inferring actual knowledge, (2) the pleading standard applicable at this stage of the case, (3) the culpability required for cases involving “unhurried judgment[ ],” Vargas, 783 F.3d at 973, and (4) the essential purposes of the state-created danger doctrine. First, by requiring Appellant to plead Schroeter’s knowledge of a bullet in the chamber, the District Court in effect required plaintiffs to plead actual knowledge using only direct evidence. .But the Supreme Court has instructed that “[w]hether a [state actor] ha[s] the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious,” Farmer, 511 U.S. at 842, 114 S.Ct. 1970 (citation omitted); see also Hope, 536 U.S. at 738, 122 S.Ct. 2508, and we have likewise stated that “[inferring mental state from circumstantial evidence is among the chief tasks of factfin-ders,” United States v. Wright, 665 F.3d 560, 569 (3d Cir. 2012); see also McFadden v. United States, — U.S. —, 135 S.Ct. 2298, 2304 n.1, 192 L.Ed.2d 260 (2015) (“The Courts of Appeals have held that, as with most mens rea requirements, the Government can prove the requisite mental state through either direct evidence or circumstantial evidence.”). Second, in concluding that the allegations of the complaint (other than Schroe-ter’s criminal guilty plea) do not give rise to an inference of actual knowledge of risk, the District Court and our concurring colleague have done the inverse of what we are required to do at the pleading stage: Instead of considering the complaint as a whole, they consider “whether any individual allegation, scrutinized in isolation, meets that standard,” Tellabs, 551 U.S. at 322-23, 127 S.Ct. 2499, and instead of “drawing] all inferences from the facts alleged in the light most favorable to [the plaintiff],” Phillips, 515 F.3d at 228, they draw all inferences in the light most favorable to the defendant. For example, while acknowledging that obviousness of risk can support an inference of actual knowledge, the Concurrence posits that obviousness of risk “could also ... support an inference that there was not deliberate indifference.” Concurrence at 456. While not disputing that Schroeter’s training and experience are relevant to assessing Sehroeter’s state of mind, the Concurrence hypothesizes that they make it less plausible, not more plausible, that Schroeter was aware that his conduct carried a substantial risk of lethal harm.[15] And while granting that Schroeter acknowledged in writing the safety protocols he failed to follow, the Concurrence rejects the unavoidable inference that Schroeter therefore knew the risk of harm those protocols were intended to prevent and instead speculates that Schroeter possibly “d[id] not ... remember[ ]” his training and did not know that “he failed to follow” the rules. Concurrence at 456-57. Only by drawing each inference in favor of the defendant can the District Court and Concurrence conclude that Schroeter was not “aware ... that pulling the trigger carried a deadly risk,” Kedra, 161 F.Supp.3d at 363-64, or that it is no more than “possible]” or “conceivable” that he knew the gun “might be loaded” when he fired it. Concurrence at 456 (alteration in original). Although, at trial, Schroeter might offer evidence that he affirmatively believed the gun was unloaded and had some reasonable basis for such a belief, we may not prevent the case from ever reaching trial by positing other possible inferences and “den[yingj” the plaintiff “the inferences to which her complaint is entitled,” Phillips, 515 F.3d at 237. Instead, we need only ask whether it is “plausible”—given the obviousness of the risk—to believe a trained firearms instructor with twenty years’ experience knows that any unchecked gun might be loaded and therefore cannot be fired at another person without substantial risk of serious harm.[16] To state the question is, as a matter of “common sense,” Iqbal, 556 U.S. at 679, 129 S.Ct. 1937, to answer it: Appellant’s allegations are more than enough to “nudge[]” her claim “across the line from conceivable to plausible.” Twombly, 556 U.S. at 570, 129 S.Ct. 1849. Third, by requiring Appellant to plead that Schroeter had actual knowledge of a bullet in the chamber, the District Court imposed a novel and heightened culpability standard on a plaintiff pleading deliberate indifference, elevating knowledge of a “substantial risk” of harm to knowledge of a certainty of harm, confusing ■ the “conscious disregard” standard that applies where an officer can exercise “unhurried judgment” with the far higher standard of “intent to harm” that applies when an officer a state actor must act in a “hyper-pressurized environment requiring a snap judgment,” Vargas, 783 F.3d at 973-74 (brackets and internal quotation marks omitted), and, at bottom, requiring a plaintiff to plead criminal (and here, homicidal) intent to overcome qualified immunity.[17] “Intent to harm,” however, far exceeds what is required to plead deliberate indifference. Vargas, 783 F.3d at 973-74. In discussing deliberate indifference in the Eighth Amendment context, the Supreme Court has emphasized that a claimant “need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm,” Farmer, 511 U.S. at 842, 114 S.Ct. 1970. We too have made this distinction clear in the Fourteenth Amendment context, describing “deliberate indifference” as a “willingness to ignore a foreseeable danger or risk,” Morse, 132 F.3d at 910, and observing that conscience-shocking behavior for “unhurried” situations, Vargas, 783 F.3d at 973, requires- “proof of something less than knowledge that the harm was practically certain ... [to] occur,” Ziccardi v. City of Philadelphia, 288 F.3d 57, 66 (3d Cir. 2002). The cases in which we have applied this standard also illustrate that the subjective knowledge test requires knowledge only of the substantial risk of serious harm, not of the certainty of that harm. For instance, in Kneipp, we held that the plaintiffs could show the defending police officers’ mental state of “willful disregard” based on the foreseeable risk that -serious harm was likely to befall an unescorted woman whom they had left “in a visibly intoxicated.state in cold weather”; we did not require the plaintiffs to allege that the police officers knew with certainty that the woman would fall down an embankment and suffer hypothermia. 95 F.3d at 1208-09. In Phillips, we held that the plaintiff adequately alleged deliberate indifference because the .complaint had “allege[d] facts [showing] that the defendants ... foresaw the danger of harm their actions presented,” even if the complaint did not allege that the defendants knew with certainty that their former co-worker would find and kill his ex-girlfriend, her sister, and her then-boyfriend. 515 F.3d at 228-29, 240-41. And more recently in L.R., we denied qualified immunity to the teacher who released a kindergartener into the custody of a stranger, observing -that the teacher was “aware of the risk of harm in releasing [the child] to a stranger, even if he was unaware of [the perpetrator’s] specific criminal intent.” 836 F.3d at 246. As these cases make clear, all that is required to satisfy deliberate indifference is “conscious disregard of a substantial risk of serious harm,” Vargas, 783 F.3d at 973-74 (brackets and internal quotation marks omitted), regardless of whether that harm is either intended or certain to occur, see Lewis, 523 U.S. at 852 n.11, 118 S.Ct. 1708; L.R., 836 F.3d at 246; Phillips, 515 F.3d at 241; Kneipp, 95 F.3d at 1208-09. That is the standard applicable where, as here, an official has time tó make “unhurried judgments,” Vargas, 783 F.3d at 973, and Appellant’s factual allegations are more than sufficient to satisfy that standard. See supra Section III.B.l. What is not required is knowledge of certainty of harm or the intent to .harm—the standard expressly adopted by the District Court. See Kedra, 161 F.Supp.3d at 363-66. Lastly, the District Court’s approach to deliberate indifference is inconsistent not only -with the applicable pleading and culpability standards, but also with the purposes of the state-created danger doctrine. Although the District Court found that Schroeter could not be held liable for deliberate indifference without an allegation of intent to harm, see Kedra, 161 F.Supp.3d at 363-66, this approach is mistaken, for requiring criminal or even homicidal intent for liability under the state-created danger doctrine disregards the twin goals of compensation and deterrence underlying’the doctrine and, more broadly, ignores the statutory goals that Congress codified in 42 U.S.C. § 1983. The state-created danger doctrine—rooted in the Fourteenth Amendment’s guarantee of due process, which is “designed to ... secure certain individual rights against both State and Federal Government,” Daniels v. Williams, 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)—exists to provide plaintiffs with recompense when a state official, who is entrusted with particular responsibilities and duties with respect to a particular person or' “class of. persons,” Bright, 443 F.3d at 281 (discussing DeShaney v. Winnebago Cty. Dep’t of Soc. Servs., 489 U.S. 189, 201, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)), acts with at least “conscious disregard of a substantial risk- of serious harm,” Vargas, 783 F.3d at 973-74 (brackets and internal quotation marks omitted), and affirmatively uses his authority “in a way that create[s] a danger to [a] citizen or that render[s] the citizen more vulnerable to danger” than had he not acted at all, Bright, 443 F.3d at 281. Because the state-created danger doctrine applies only where these particular special relationships exist, the victims of the state officials’ acts will always be persons who either expected the officials not to injure them or justifiably relied on the officials to protect them from threats to their safety. See, e.g., L.R., 836 F.3d at 239-40, 247; Phillips, 515 F.3d at 228-29, 242-43; Kneipp, 95 F.3d at 1201-05, 1209 (citing DeShaney, 489 U.S. at 199-200, 109 S.Ct. 998). Where such officials in unhurried situations consciously disregard the risk of harm to persons relying on them for safety, even if the officials did not know with certainty that their actions would lead to serious or lethal harm, the victims—or at least their survivors— are entitled to recompense. What’s more, remedies under § 1983, as applied to state-created danger cases, not only seek to “provide relief to victims,” but also serve the additional “purpose ... [of] deter[ring] state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights.” Squires v. Bonser, 54 F.3d 168, 172 (3d Cir. 1995) (quoting Wyatt v. Cole, 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992)). When officers know that they may be held liable under § 1983 for conscience-shocking behavior that endangers persons relying on them, see Bright, 443 F.3d at 281, the threat of § 1983 state-created danger suits acts as a deterrent force against individual officers acting with “conscious disregard of a substantial risk of serious harm,” Vargas, 783 F.3d at 973-74 (brackets and internal quotation marks omitted). This “important public purpose” also helps “protect[ ] the rights of the public at large,” Livingstone v. N. Belle Vernon Borough, 91 F.3d 515, 535 (3d Cir. 1996), because, to the extent that municipalities may be held liable for their officers’ conduct, see Monell v. Dep’t of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and to the extent non-municipal governmental entities are obliged to indemnify officers held liable under § 1983, see generally, e.g., N.J. Stat. Ann. § 59:10A-1, state-created danger suits encourage these entities to implement and provide training on policies that deter such conscience-shocking conduct, cf. Monell, 436 U.S. at 694-95, 98 S.Ct. 2018. In sum, because the allegations in Appellant’s complaint collectively give rise to the inference that Schroeter acted with actual knowledge of a substantial risk of lethal harm—that is, knowledge that gives rise to “a degree of culpability that shocks the conscience” under the then-clearly established actual knowledge theory of deliberate indifference, Bright, 443 F.3d at 281; see Farmer, 511 U.S. at 837-38, 843 n.8, 114 S.Ct. 1970; Sanford, 456 F.3d at 309-10 & n.13—Appellant has adequately pleaded her state-created danger claim.[18] C. Whether the Right at Issue Was Clearly Established Having concluded that the facts, as alleged, plead the elements of a substantive due process violation under , a clearly established theory of liability, we must still contend with Schroeter’s argument that there was- no precedent sufficiently “factually similar to the plaintiff’s allegationsl ] to put [him] on notice that his ... conduct [was] constitutionally prohibited.” Appellee’s Br. 26 (quoting Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016)). This targets the second prong of the qualified immunity analysis from a different angle and requires us to ask “the objective (albeit fact-specific) question whether a reasonable officer could have believed [Schroeter’s conduct] to be lawful, in light of clearly established law and the information [he] possessed.” Anderson, 483 U.S. at 641, 107 S.Ct. 3034; see also Beers-Capitol, 256 F.3d at 142 n.15. Because the District Court here concluded Appellant’s theory of deliberate indifference was not clearly' established law, it did not proceed to define the specific right at issue or to address whether that right was itself clearly established at the relevant time. See Kedra, 161 F.Supp.3d at 365. However, “[d]efining the right at issue is critical to this inquiry.” L.R., 836 F.3d at 248. We must frame the right at issue “in light of the specific context of the case, not as a broad general proposition,” Mullenix v. Luna, — U.S. —, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam), and so while “[(Individuals indeed have a broad substantive due process right to be free from ‘unjustified intrusions on personal security,’ ” L.R., 836 F.3d at 248-49, that defines the right at issue at too high a level of generality. Here, in view of the allegations of the complaint, we define what is at issue as an individual’s right not to be subjected, defenseless, to a police officer’s demonstration of the use of deadly force in a manner contrary to all applicable safety protocols.[19] We then must determine whether the contours of that right áre sufficiently clear that “a reasonable officer would understand that what he is doing violates that right.” Rivas, 365 F.3d at 200. We typically look to Supreme Court precedent or a consensus in the Courts of Appeals to give an officer fair warning that his conduct would be unconstitutional. Mammaro, 814 F.3d at 169. However, it. need,not be the case that the exact conduct has previously been held unlawful so long as the “contours of the right” are sufficiently clear, Anderson, 483 U.S. at 640, 107 S.Ct. 3034, such that a “general constitutional rule already identified in the decisional law” applies with “obvious clarity,” Hope, 536 U.S. at 741, 122 S.Ct. 2508. “If the unlawfulness of the defendant’s conduct would have been apparent tp a reasonable official based on the current state of the law, it is not necessary that there be binding precedent from this circuit sp advising.” Brown v. Muhlenberg Twp., 269 F.3d 205, 211 n.4 (3d Cir. 2001). “[Officials can still be on notice that their conduct violates established law even in novel factual circumstances,” because the relevant question is whether the state of the law at the time of the events gave the officer “fair warning.” Hope, 536 U.S. at 741, 122 S.Ct. 2508. We are persuaded that Schroeter had such fair warning at the time of the shooting. This was not merély an accidental discharge of a firearm that happened to be “point[ed] .. 1 at another officer” at the time. Concurrence at 452. Instead, at a training Kedra was required to attend, he was subjected to his training instructor contravening each and every firearm safety protocol by skipping over both required safety checks, treating the firearm as if it were unloaded, pointing the firearm directly at Kedra, and pulling the trigger. Our case law made it clear at that time that state actors may be liable for affirmatively exposing a plaintiff to a deadly risk of harm through “highly dangerous ... conduct,” Morse, 132 F.3d at 910 n.10, or through “us[ing] their authority as police officers to create a dangerous situation or to make [the victim] more vulnerable to danger had they not intervened,” Kneipp, 95 F.3d at 1209, and that officials are expected to use the benefit of their expertise and professional training when confronted with situations in which they are responsible for preventing harm to other individuals, see Rivas, 365 F.3d at 194-95. Under that case law, no reasonable officer who was aware pf the lethal risk involved •in demonstrating the use of deadly force on another person and-who proceeded to conduct the demonstration in a manner directly contrary to known safety protocols could think his conduct was lawful. On the contrary,, as we observed in Beers-Capitol, “a reasonable [state actor] could not believe that h[is] actions comported with clearly established law while also believing that there is an excessive risk to the plaintiff ] and failing to adequately respond to that risk.” 256 F.3d at 142 n.15. In addition to Pur own case law and that of the Supreme O.ourt, “we routinely consider decisions by other Courts of Appeals as part of our ‘clearly established’ analysis when we have not yet addressed the specific right asserted by the plaintiff.” Williams v. Bitner, 455 F.3d 186, 192-93 (3d Cir. 2006) (collecting cases). A -closely analogous case from the First Circuit confirms that a reasonable officer would anticipate liability for this conduct. In Marrero-Rodríguez v. Municipality of San Juan, that court considered the actions of a police lieutenant who violated numerous safety protocols while engaging in a training session. 677 F.3d 497, 500 (1st Cir. 2012). In participating in the live demonstration exercise there, the officer failed to discharge the bullets from his gun into a sandbox as required when entering the training area, used a real gun rather than the required “dummy” gun, and shot the gun directly into the back of, a trainee—who was not wearing a bulletproof vest—while the trainee was lying face-down on the ground. Id. Just as here, there was no allegation that the officer knew his gun was loaded or that he intended to harm his fellow officer. The court nonetheless concluded that “using what was obviously lethal force, entirely disproportionate to any reasonable need, in conducting the lesson” was “shockingly indifferent to the rights” of the trainee.[20] Id. at 501-02; cf. Hawkins v. Holloway, 316 F.3d 777, 787 (8th Cir. 2003) (holding that “an official’s threat to employ deadly force” with a firearm rose to the level of “arbitrary and conscience shocking behavior prohibited by substantive due process”); Grandstaff v. City of Borger, 767 F.2d 161, 167-68 (5th Cir. 1985) (holding, it was clearly established that the use of “deadly, force, in conscious disregard of substantial risk of harm to innocent parties” was a constitutional due process violation).[21] Schroeter, however, relies on Spady v. Bethlehem Area School District to argue that the right here should be defined more narrowly and that this right was not clearly established at the time. 800 F.3d 633 (3d Cir. 2015). In Spady, a student was briefly submerged in water during a swimming class, exited the pool 'and complained of some chest pain, returned to the pool as directed for the remainder of the class, and more than an hour later suffered serious distress and death from a rare condition known' as “dry drowning.” Id. at 635-36. In the face of this extremely unusual and “non-apparent condition,” we defined the right there as “the right to affirmative intervention by the state actor to minimize the risk of secondary or dry drowning,” and held that risk would not have been apparent to a reasonable gym teacher under our state-created danger cases. Id. at 638-42. Drawing on that analysis, Schroe-ter contends that the harm that came to Kedra was also due to a “non-apparent” condition, id. at 639, such that the right should be .defined as a “right ... in favor of a trainee in .a state office which ... requires affirmative compliance with all required safety procedures so as to ... ‘minimize the risk’, to the trainees during a training session.” Oral Arg. at 25:45-27:38 (quoting Spady, 800 F.3d at 638). This argument mischaracterizes the risk of harm presented on the face of Appellant’s complaint and misstates our case law. There is nothing “non-apparent,” Spady, 800 F.3d at 639, in the risk of harm caused by pointing a firearm at an unarmed person and pulling the trigger at close range. Quite the opposite: The substantial risk of lethal harm is glaringly obvious here and bears no resemblance to' the obscure and improbable risk of dry drowning, which we concluded the coach in Spady could not have been reasonably ex.pected to know about or protect against. Indeed, we expressly distinguished the facts of Spady from those of Kneipp, pointing out that in Kneipp, the officers’ “act of separating a visibly intoxicated person from her traveling companion and then forcing her to walk home alone .., necessarily increased the obvious risk that she would fall and injure herself.” Spady, 800 F.3d at 639. And at issue here is not a training instructor’s failure to “eompl[y] with all required safety procedures” to minimize the risk to trainees, Oral Argl at 26:00-26:06; it is a training instructor’s physical demonstration of the use of deadly force on a defenseless subject while failing to comply with any required safety procedure to avoid the risk of death. Spa-dy is simply inapposite where, as here, the risk was obvious, the risk was actually known to the state actor, the safety precautions that could have avoided that risk were the very subject matter of the actor’s training and expertise, and those safety precautions were skipped or directly contravened. In sum, the right alleged to have been violated was clearly established, and Ap- ■ pedant’s complaint sufficiently pleads a violation of that right. Accordingly, Schroe-ter was not entitled to qualified immunity. IY. Conclusion For the foregoing reasons, we will reverse and remand for proceedings consistent with this opinion. . Appellant filed a First Amended Complaint that differed from her original complaint only in listing her title as “personal representative of the Estate.” JA 29. As the substance of the complaints is the same, we will simply refer to the relevant document as the "complaint.” . Collateral estoppel is a judicial doctrine that precludes relitigation of an issue already decided in a previous proceeding if "(Í) the issue decided in the prior adjudication was identical with the one presented in the later action, (2) there was a final judgment on the merits, (3) the party against whom the plea is asserted was a party or in privity with a party to the prior -adjudication, and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.” Dici v. Pennsylvania, 91 F.3d 542, 547-48 (3d Cir. 1996). The District Court believed this last criterion was not satisfied because Schroeter did not "ha[ve] a ‘full and fair opportunity to litigate’ the question of his constitutional culpability on the basis of a guilty plea in a state criminal court.” Kedra, 161 F.Supp.3d at 364 n.5, Although Appellant did not rely on the guilty plea for its preclusive effect, but only as a basis from which to infer Schroeter’s actual knowledge of the risk of harm, the District Court assumed that the requirements for collateral estoppel had to be satisfied for the-plea to be considered in any way relevant. Id. . Appellant argues before us that the dismissal should have been without prejudice so that she could have an opportunity to supplement her pleading of deliberate indifference in an amended complaint. Because we. conclude Appellant already pleaded sufficient facts to sustain her claim, see infra Section III.B.1, we need not address whether the District Court erred in denying leave to amend.. . In ruling that an objective test was not a clearly established means to plead deliberate indifference, the District Court's approach arguably combined elements of both the first • and second prongs of the qualified immunity analysis. Yet, those inquiries diverge in-a significant respect with regard to mens red, for even where an element of a claimed violation includes a subjective test, "the test for qualified immunity's objective..,. That is, [an official] is entitled to qualified immunity only if she can show that a reasonable person in her position at the relevant time could have believed, in light of clearly established law, that her conduct comported with established legal standards.’.’ Beers-Capitol, 256 F.3d at 142 n.15. And for that reason, we have instructed courts to treat the two prongs of qualified immunity as analytically distinct so as to avoid confusing their different mens rea requirements. Phillips, 515 F.3d at 242. At the same- time, as the Supreme Court has recognized, "whether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded,” and ”[i]n that sense the sufficiency of [Appellant’s] pleadings is both inextricably intertwined with, and directly implicated by, the qualified immunity defense.” Ashcroft v. Iqbal, 556 U.S. 662, 673, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citations and internal quotation marks citations omitted); accord L.R. v. Sch. Dist. of Phila., 836 F.3d 235, 241 (3d Cir. 2016). . We undertake this inquiry in the first instance to decide whether we may affirm on this alternative ground, see MRL Dev. I, LLC v. Whitecap Inv. Corp., 823 F.3d 195, 202 (3d Cir. 2016), and. because it turns on a purely legal- question, our resolution of which will best serve the interests of judicial efficiency on remand, see Wallach v. Eaton Corp., 837 F.3d 356, 374-75 (3d Cir. 2016); Loretangeli v. Critelli, 853 F.2d 186, 189 n.5 (3d Cir. 1988). . -We are unconvinced by Schroeter’s argument that no state-created danger claim is cognizable where, as here, the alleged violation is based on a state actor’s endangerment of a fellow government employee. While the Due Process Clause does not guarantee state employées' "certain minimal levels of safety and security” in the workplace, Collins v. City of Harker Heights, 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), we have long held that a government employee may bring a substantive due process claim against his employer if the state compelled the employee to be exposed to a risk of harm not inherent in the workplace, see Kaucher v. Cty. of Bucks, 455 F.3d 418, 430-31 (3d Cir. 2006); Eddy v. V.I. Water & Power Auth., 256 F.3d 204, 212-13 (3d Cir. 2001). We have no trouble concluding this standard is met in the context of a mandatory firearms training in which the trainees were required to be physically present without protection and the firearms instructor, instead of following safety protocols and demonstrating the proper use of a firearm, disregarded all protocols and fired directly at a trainee at close range, . Schroeter also appears to contest the fourth element by casting his conduct as an omission to check the gun for a bullet and contending that he may be held liable only for an affirmative act. Yet the complaint alleges Schroeter skipped over required safety checks, picked up a firearm, raised it, pointed it at Kedra, and pulled the trigger. These indisputably affirmative acts "created an opportunity for harm that would not have otherwise existed.” Rivas v. City of Passaic, 365 F.3d 181, 197 (3d Cir. 2004). Those acts, which directly caused Kedra’s death, also set this case apart from those that we have deemed to involve mere omissions. See, e.g., Bright, 443 F.3d at 284-85 (state actor not liable for failing to prevent harm inflicted by a third party); D.R. ex rel. L.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1374-76 (3d Cir. 1992) (en banc) (same). . Compare, e.g., Board v. Farnham, 394 F.3d 469, 478 (7th Cir. 2005) (noting that the test for deliberate indifference under the Fourteenth Amendment is “closer to tort recklessness” than to the Eighth Amendment's “criminally reckless” standard), Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902, 905-06 (8th Cir. 1999) (suggesting, that the purely subjective standard from Farmer may ■ be inappropriate for due process claims brought by pretrial detainees), and Christiansen v. City of Tulsa, 332 F.3d 1270, 1281 (10th Cir. 2003) (framing the standard in the state-created danger context as whether the risk was "obvious or known”), with, e.g., Ewolski v. City of Brunswick, 287 F.3d 492, 513 (6th Cir. 2002) (adopting Farmer’s subjective standard for due process claims), and Hare v. City of Corinth, 74 F.3d 633, 648 (5th Cir. 1996) (en banc) (same). . Recognizing the significance of Kingsley, the Ninth Circuit, sitting en banc, has extended it to failure-to-protect claims, framing the test as whether a "reasonable officer in the circumstances would. have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious,” Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc), and the Second Circuit has extended it to conditions-of-confinement claims, holding that "deliberate indifference should be defined objectively for a claim of a due process violation” and that the relevant inquiry post-Kingsley is what the "defendant-official knew, or should have known,” Darnell v. Pineiro, 849 F.3d 17, 35-36 (2d Cir. 2017). Cf. Alderson v. Concordia Parish Corr. Facility, 848 F.3d 415, 419 n.4 (5th Cir. 2017) (declining to extend Kingsley to failure-to-protect claims absent en banc reconsideration of ‘controlling Circuit precedent). Like the Supreme Court, both Circuits explicitly rejected arguments that an objective test would devolve into a negligence standard, See Darnell, 849 F.3d at 36 ("[A]ny § 1983 claim for a violation of due process requires proof óf a mens rea greater than mere negligence.”); Castro, 833 F.3d at 1071 n.4 (observing that an objective test "prevent[s] 'ov-erinclusiveness’ by ensuring that liability will attach only in cases where the defendant's conduct is more egregious than mere negligence”). . In his concurrence, Judge Fisher seeks to revisit L.R., positing, despite its terms, that it left Sanford's question unanswered; that its reliance on the objective test was dictum because it also observed the teacher’s conduct would meet the subjective test, but see Woods v. Interstate Realty Co., 337 U.S. 535, 537, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) (discussing the significance of alternative holdings); Meister v. Comm'r, 504 F.2d 505, 509 (3d Cir. 1974) (noting that where we give "an alternative basis for our holding” prefaced with language such as "additionally,” this does not mean the earlier holding is to be "disregarded” or is any less "critical”); and that an objective test cannot distinguish between conscience-shocking behavior and mere negligence and thus risks rendering the Fourteenth Amendment a "font of tort law,” Concurrence at 454-55; but see Kingsley, 135 S.Ct. at 2474; Palakovic, 854 F.3d at 231; Darnell, 849 F.3d at 35-36; Castro, 833 F.3d at 1071, While our concurring colleague may disagree with the evolution of our substantive due process jurisprudence, we generally may not, short of en banc reconsideration, alter our Circuit precedent, see Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 116 (3d Cir. 2010), and we have no occasion to do so today. Instead, our concern is whether Appellant sufficiently pleaded deliberate indifference under a culpability standard that was then-clearly established. For1 the reasons we explain below, see infra Section III.B.l, Appellant’s' allegations as to Schroeter’s training and experience, to say nothing of his written acknowledgements and admissions in the context of his guilty plea, are more than sufficient to show deliberate indifference under the then-clearly established subjective standard and conduct that was not merely negligent but "shocks the conscience," Bright, 443 F.3d at 281. . We also recently resolved what we had identified as an open question after Farmer, see Woloszyn v. Cty. of Lawrence, 396 F.3d 314, 321 (3d Cir. 2005), as to whether the "deliberate indifference" standard in the prison suicide context is a subjective or objective one. Palakovic v. Wetzel, 854 F.3d 209 (3d Cir. 2017). There too we held the standard was objective and identified the relevant inquiry for both substantive due process claims and Eighth Amendment claims as whether "the prison official knew or should have known of the individual’s particular vulnerability,” id. at 224 (emphasis added), explaining that "[i]t is not necessary for the custodian to have a subjective appreciation of the detainee’s particular vulnerability. Rather, ... ‘reckless or deliberate indifference to that risk’ only demands ‘something more culpable on the part of the officials than a negligent failure to recognize the high risk of suicide,’ ” id. at 231 (citation omitted). . Our Sister Circuits, with near unanimity, also have recognized the relevance of obviousness of risk to proving actual knowledge. See, e.g., Miranda-Rivera v. Toledo-Davila, 813 F.3d 64, 75 (1st Cir. 2016); Gant ex rel. Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 141 n.6 (2d Cir. 1999); McQueen v. Beecher Cmty. Sch., 433 F.3d 460, 469 (6th Cir. 2006); Farnham, 394 F.3d at 478; Ryan v. Armstrong, 850 F.3d 419, 425 (8th Cir. 2017); Kennedy v. City of Ridgefield, 439 F.3d 1055, 1064 (9th Cir. 2006); Valderrama v. Rousseau, 780 F.3d 1108, 1116 (11th Cir. 2015). . Schroeter argues that we should disregard L.R. entirely because it post-dated the shooting. As the Supreme Court has observed, however, a later-decided case may still be considered when assessing whether a principle was clearly established to the extent the .case is merely "illustrative of the proper application” of a previously established constitutional principle. Wiggins v. Smith, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (discussing this meaning of “clearly established” in the habeas context). It is for that limited purpose that we refer to L.R. in phis part of our discussion, . The question whether a state criminal con- ' viction based on a guilty plea may be preclu-sive of any claims or issues is a question of the law of the state where the criminal proceeding took place, see Allen v. McCurry, 449 U.S. 90, 104-05, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); Dici, 91 F.3d at 547-48, and one we need not answer as Appellant relies on the plea at this stage not to invoke issue preclusion, but only to argue that her allegations were sufficient to survive Schroeter’s motion to dismiss. We note, however, that under Pennsylvania law, a party’s "criminal conviction may be used to. establish the operative facts iñ a subsequent civil case based on those same facts, and ... [a] guilty plea constitutes an admission to all the facts, averred in the indictment.” Commonwealth, Dep't of Transp. v. Mitchell, 517 Pa. 203, 535 A.2d 581, 585 (1987) (citation omitted); see also Restatement (Second) of Judgments § 85 cmt. c (Am. Law Inst. 1982). Particularly where, as here, a party is not claiming issue preclusion but is relying on a plea only as a factual allegation to support an inference of actual knowledge, the plea is, at least to that extent, relevant. . At oral argument, Schroeter's counsel went even further, stating that "[b]ecause Corporal Schroeter was an experienced person with training experience, in particular, it can’t be alleged that he knew he wasn’t following [the safety protocols]. He has to have believed he was following ... them or he would not have done what he did.” Oral Arg. at 37:43-38:06, available at http://www2.ca3. uscourts. gov/oralargumenVaudio/16-1417 Kedrav.Schroeter.mp3. Aside from being entirely circular, Schroeter’s reasoning that the more obvious the risk, the weaker the inference of conscious disregard, flies in the face of Supreme Court precedent, which not only treats obviousness of risk as a basis from which to infer actual knowledge of risk, see, e.g., Hope, 536 U.S. at 738, 122 S.Ct. 2508; see also Phillips, 515 F.3d at 237-39; Morse, 132 F.3d at 910 n.10; Kneipp, 95 F.3d at 1208-09, but, as discussed above, also instructs us, in reviewing the sufficiency of a complaint, to draw this very reasonable inference in favor of the plaintiff—not, as Schroe-ter urges, the other way around, see Iqbal, 556 U.S. at 678, 129 S.Ct. 1937; see also Phillips, 515 F.3d at 231, 233, Counsel’s argument points up another reason qualified immunity must be denied in this case: The complaint alleges that Schroeter acted with actual awareness of the risk; Schroeter disputes that allegation. What we have here portends a quintessential disputed issue of material fact, turning on the credibility of witnesses to be assessed by a jury, see Metzger v. Osbeck, 841 F.2d 518, 521 (3d Cir. 1988), and certainly not appropriate for resolution on a motion to dismiss, see Phillips, 515 F.3d at 234-35. . The Concurrence contends that obviousness of risk could not, in and of itself, be sufficient to plead actual knowledge, excerpting from Farmer that "obviousness of a risk is not conclusive.” Concurrence at 456 (quoting Farmer, 511 U.S. at 843 n.8, 114 S.Ct. 1970). In context, however, that excerpt proves precisely the opposite, for the Supreme Court there explained that, at the summary judgment stage—despite the indisputable inference of actual knowledge raised by obviousness of risk—there may yet be a genuine issue of material fact because “a prison official may show that the obvious escaped him.” Farmer, 511 U.S. at 843 n.8, 114 S.Ct. 1970. The Court then proceeded to observe that, at trial, obviousness of risk alone could support a finding of liability, stating that if "circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus ‘must have known’ about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.” Id. at 842-43, 114 S.Ct. 1970. In short, Farmer recognizes "that obviousness of risk alone can be sufficient to survive summary judgment and to establish actual knowledge at trial; a fortiori, it is sufficient to give rise to an inference of actual knowledge at the pleading stage. . The District Court also suggested at one point that the complaint was deficient for failure to plead that Schroeter was “consciously aware that he had failed to follow all of the safety rules and proceeded anyway,” emphasizing the lack of an allegation that Schroeter "realize[d] in the moment” he was not following the rules. Kedra, 161 F.Supp.3d at 363. There is no requirement, however, that a defendant be thinking “in the moment” he causes injury that he is violating relevant safety rules. As Appellant astutely observes, to the extent the District Court acknowledged the allegation that Schroeter knew the gun safety rules and acted in 'violation of them, but found fault in Appellant’s failure to specifically allege that Schroeter “kri[ew] he was acting in violation of them,” its parsing of the culpability analysis “seems, akin to counting angels dancing on the head of a pin.” Appellant’s Br. 18. More importantly, however, Farmer and our case law have not required a plaintiff to plead and prove conscious disregard of safely rules as an element of a state-created danger claim, but rather "conscious disregard of a substantial risk of serious harm,” Vargas, 783 F.3d at 973-74 (brackets and internal quotation marks omitted); see also Farmer, 511 U.S. at 842, 114 S.Ct. 1970—a standard that, as discussed supra at Section III.B.l, may be supported (as it is here) by a variety of factual allegations, including the state actor’s violation of applicable safety protocols before the harm is actually inflicted. . Contrary to our concurring colleague’s concerns about what our holding in this case portends for state-created danger cases or the element of deliberate indifference going forward, we do not today “reduc[e] the standard of deliberate indifference” anywhere "close to negligence.” Concurrence at 456-57. Instead, we require of Appellant’s complaint what we have historically required for liability under the state-created danger doctrine: allegations of conscience-shocking, affirmative behavior from a state official that caused "foreseeable and fairly direct” harm to a person who was a foreseeable victim of that behavior. Bright, 443 F.3d at 281. . Our concurring colleague would define the right at issue as "a police officer’s right not to be subjected to a firearms training in .which the instructor acts with deliberate indifference, that is, consciously disregards a known risk of death or great bodily harm.” Concurrence at 458. But that definition is broader, not narrower, than what we articulate because it is susceptible to a wide range of applications and is not, by its terms, anchored in any factual scenario. Moreover, with that definition, it is a foregone conclusion whether the right is "clearly established,” because its definition merely repeats the elements of the claim. Both to "give[] government officials breathing room to make reasonable but mistaken judgments,” Messerschmidt v. Millender, 565 U.S. 535, 546, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012), and to avoid turning the test for clearly established rights into a mere tautology, see, e.g., Saucier v. Katz, 533 U.S. 194, 204, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (rejecting a suggestion to make “excessive force analysis indistinguishable from qualified immunity, rendering the separate immunity inquiry superfluous and inappropri- ' ate,” and holding that the two "inquiries ... remain distinct”), the Supreme Court has repeatedly ■ admonished courts to define the right "not as a broad general proposition,” Mullenix, 136 S.Ct. at 308, but in terms “ ‘particularized’ to the facts of the case,” White v. Pauly, — U.S. —, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (per curiam). That definition also conflates the first and second prongs of the qualified immunity analysis, for while a plaintiff assuredly must establish the elements of a constitutional violation at the first prong, we do not require those elements to be restated within the definition of a right at the second prong to assess whether that right was clearly established. Rather, the focus of that assessment is whether the specific conduct at issue'is sufficiently "factually similar” to then-existing precedent to put a reasonable officer "on notice that his ... conduct [was] constitutionally prohibited,” Mammaro, 814 F.3d at 169, and the right at the second prong is therefore generally defined by the factual context of the "particular conduct,” Saucier, 533 U.S. at 201, 121 S.Ct. 2151, not by the legal elements of the claim, Mullenix, 136 S.Ct. at 308. . The Concurrence seeks to distinguish Mar-rero-Rodriguez from this case on the ground that there “dummy guns” were to be used, 677 F.3d at 500, whereas here the training involved real firearms. For purposes of deliberate indifference, however, this is a distinction without a difference. In both cases, the officer used a firearm in a way that was not allowed by failing to conduct basic safety checks to determine whether the fifearm was loaded prior to firing it. That- Schroeter made a "mistake, however reckless,” Concurrence at 460, is exactly the point: ”[R]eckless[ ] disregard!]” of a “substantial risk of serious harm” is the very definition of deliberate indifference. Farmer, 511 U.S. at 836, 114 S.Ct. 1970. . As Appellant points out, Fourth Amendment excessive force cases like Baird v. Renbarger, 576 F.3d 340 (7th Cir. 2009), and Couden v. Duffy, 446 F.3d 483 (3d Cir. 2006), which recognize a citizen’s clearly established right not to have a police officer “point” a gun at him if he poses “no hint of danger,” Baird, 576 F.3d at 346-47; accord Couden, 446 F.3d at 497-98, also support the notion that the substantive due propess right here was clearly established. While we need not rely on those cases given the ample case law supporting the clearly established nature of this right in the substantive due process context itself,. those Fourth Amendment cases only reinforce our conclusion here. . The majority notes that on appeal, Schroe-ter appears to contest the fourth element by arguing that his conduct constituted a failure to act, rather than an "affirmative act,” as is required. Sanford v. Stiles, 456 F.3d 298, 305 (3d Cir. 2006). The complaint sufficiently alleges that, by not performing safety checks and then raising and firing the gun, Schroeter "created an opportunity for harm that would not have otherwise existed.” Rivas v. City of Passaic, 365 F.3d 181, 197 (3d Cir. 2004) (combination of acts and omissions satisfied fourth prong of state created danger analysis).