# United States Court of Appeals
## For the First Circuit

No. 11-1195

NORMA MARRERO-RODRÍGUEZ, individually and in representation of her children C.L.M. and A.L.M.; C.L.M., minor; A.L.M., minor,

Plaintiffs, Appellants,

v.

MUNICIPALITY OF SAN JUAN; HON. JORGE SANTINI-PADILLA, in his official capacity as the elected mayor of the Municipality of San Juan; ANGEL A. PACHECO-ORTA, individually and as Lieutenant of the Municipal Police of San Juan; HILTON CORDERO, individually and as Commissioner of the Municipal Police of San Juan; ADAM ADORNO, individually and as the Operational Field Chief of the Municipal Police of San Juan; FÉLIX VEGA, individually and as Operational Field Sub-Director of the Municipal Police of San Juan; HELDER HADOCK, individually and as the Commanding Officer of Specialized Units of the Municipal Police of San Juan; JANET MATOS, individually and as the Administrative Director of Police Training in the Municipality of San Juan; HARRY HERNÁNDEZ-MULERO, individually and as Captain of the Municipal Police of San Juan; SHERLY ALEJANDRO, individually and as Officer of the Municipal Police of San Juan; JULIO A. SANTIAGO-RODRÍGUEZ, individually and as Officer of the Municipal Police of San Juan; INSURANCE COMPANY XYZ; JOHN DOE; JANE DOE,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Lipez, Circuit Judges.

William Santiago-Sastre, with whom Alberto de Diego Collar and Meléndez-Pérez, De Diego & Jiménez were on brief, for appellants.

Francisco J. Amundaray-Rodríguez for appellees Municipality of San Juan, Jorge Santini-Padilla, and Hilton Cordero.

Michael Craig McCall, with whom Ivan M. Castro Ortiz and Aldarondo & López Bras, P.S.C. were on brief, for appellee Angel A. Pacheco-Orta.

Angel A. Valencia-Aponte for appellee Julio A. Santiago-Rodríguez.

Jorge R. Quintana-Lajara and Antonio Montalvo-Nazario on brief for appellees Adam Adorno, Helder Hadock, Harry Hernández-Mulero, and Sherly Alejandro.

Miriam González Olivencia on brief for appellees Félix Vega and Janet Matos.

May 7, 2012

**LYNCH, <u>Chief Judge</u>**.  This civil rights case brought under 42 U.S.C. § 1983 was dismissed for failure to meet the pleading standards under <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662 (2009).  As to the Fourteenth Amendment claims, we affirm the dismissal of the claims against the Municipality of San Juan and the Mayor, and we reverse the dismissal of these claims as to the remaining individual defendants who were directly involved or had responsibility for the training which resulted in the death of an officer.  The Fourth and Eighth Amendment claims were properly dismissed as to all defendants.

The basic standards under <u>Iqbal</u> are taken from our recent opinion in <u>Air Sunshine, Inc.</u> v. <u>Carl</u>, 663 F.3d 27, 33 (1st Cir. 2011):

> The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" [<u>Iqbal</u>, 556 U.S. at 678] (quoting <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> This is not a "probability requirement," but it does require "more than a sheer possibility that a defendant acted unlawfully." <u>Id.</u>

All well-pleaded facts are to be taken as true and we draw all reasonable inferences from the complaint in plaintiffs' favor.  <u>Field</u> v. <u>Napolitano</u>, 663 F.3d 505, 508 (1st Cir. 2011).  The facts pled, and those inferences, are these.  Carlos Lozada-

Vergara, a sergeant in the San Juan Municipal Police force, underwent training at the police headquarters around 10:00 p.m. on April 1, 2009. This training simulated the arrest of a suspect who did not speak Spanish. Sgt. Lozada played the role of the arrested suspect.

Defendant Lt. Angel A. Pacheco-Orta was a training supervisor. Defendant Officer Julio A. Santiago-Rodríguez, Lt. Pacheco's subordinate, was initially in charge of this training. Neither he nor Lt. Pacheco were certified instructors, nor were any certified instructors present.

The police facility in San Juan in which the training took place is a place where all who entered were supposed to discharge their weapons into a sandbox. This would ensure that all the weapons were empty before they were carried into the facility. But this requirement was not enforced. Further, in this facility, when "firearms" were needed for training, only "dummy guns," not real firearms, were to be used. This particular training was supposed to have been conducted without firearms.

Santiago initially was the highest-ranked officer involved and gave the order that bulletproof jackets not be worn during the exercise. Lt. Pacheco was not present when the exercises involving Lozada started, but he came in while the training was going on and took over. Lt. Pacheco entered the training facility with a weapon but without discharging the bullets

in his firearm into the sandbox. Santiago permitted Lt. Pacheco to enter the training area with a gun and a loaded gun at that.

Higher level police training officials who should have been present that day were not. Nor did any of them take any steps to prevent shootings from happening during such exercises, either in writing or orally, through protocols, training, or appropriate cautionary measures.

Lozada, who continued to play the role of a suspect, had been subdued; in fact, he was flat on the ground, face down, while another officer held him down by his back. Lt. Pacheco, having just arrived, said the training was not being done "properly." The other officer holding down Lozada got up and Lt. Pacheco positioned himself on Lozada's back to do the training "properly." Lt. Pacheco had Lozada completely under control, on the ground face down; Lozada was motionless and obedient.

Without any form of warning and as part of "proper" training, Lt. Pacheco pulled out his weapon, put the barrel to Lozada's back, and pulled the trigger. The weapon was not empty. The bullet pierced Lozada's back and came out through his chest. Lozada was taken to a hospital where he died five days later from his bullet wound.

Lozada left his wife, Norma Marrero-Rodríguez, and two young sons, who are the plaintiffs. They make claims under the Fourth Amendment, the Eighth Amendment, and the Fourteenth

Amendment's Due Process Clause, as well as under Puerto Rico law. Lt. Pacheco and Santiago, who were directly involved, of course, are the first group of defendants. The complaint names a second group, supervisory police officials who had some form of responsibility for the training. There is a third group, the Mayor and the Municipality.

Plaintiffs do not assert that Lt. Pacheco murdered Lozada. They do claim that the actions and inactions of the police around this exercise and the use of a loaded firearm in these circumstances shock the conscience, and that the defendants were callously and recklessly deficient in the lack of any care for the safety of Lozada. These claims meet the pleading standards as to certain claims against certain defendants.

Plaintiff's purported Fourth Amendment claim fails to meet the pleading standards of Iqbal. It was not even pled as a claim, but only mentioned on the first page of the complaint. See Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533-34 (1st Cir. 2011). As to the Eighth Amendment claim, we agree with the district court that the elements of such a claim are not present here; this case does not involve a formal adjudication of guilt or a criminal prosecution against Lozada. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).

However, many of the elements of a § 1983 claim alleging Fourteenth Amendment violations are unquestionably present as to

some defendants.  There is no doubt that the defendants were acting under color of Puerto Rico law or authority.  <u>See</u> 42 U.S.C. § 1983. There is also no doubt that the life of Lozada is one of the interests protected by the Fourteenth Amendment's Due Process Clause.  <u>See</u> U.S. Const. amend. XIV, § 1.

The individual defendants who held the positions of Lieutenant of the Municipal Police, Commissioner of the Municipal Police, Operational Field Chief, Operation Field Sub-Director, Commanding Officer of Specialized Units, Administrative Director of Police Training, Captain of the Municipal Police, and/or Instructors are all, on the pleadings, charged with responsibility for police training and the training that day.  By contrast, the Municipality is pled to be liable merely because it employs the individual defendants and because it did not have sufficient training regulations in place, and the Mayor is said to be liable because he is Mayor.

As to the Fourteenth Amendment claim, we have recognized there may be substantive due process theories of recovery which "turn on whether the alleged misconduct 'shocks the conscience.'" <u>Maldonado</u> v. <u>Fontanes</u>, 568 F.3d 263, 272 (1st Cir. 2009); <u>see</u> <u>also</u> <u>Espinoza</u> v. <u>Sabol</u>, 558 F.3d 83, 87 (1st Cir. 2009) ("The substantive component of the Due Process Clause is violated by executive action 'when it can properly be characterized as

arbitrary, or conscience shocking, in a constitutional sense.'" (quoting <u>Cnty. of Sacramento</u> v. <u>Lewis</u>, 523 U.S. 833, 847 (1998))).

While it is true that "negligent conduct is 'categorically beneath the threshold of constitutional due process,'" it is also true that "'behavior at the other end of the culpability spectrum,' i.e., 'conduct intended to injure in some way unjustifiable by any government interest,' is most likely to support a substantive due process claim. When the culpability resulting in injury falls somewhere between these extremes, it is 'a matter for closer calls,' and whether conduct is actionable as a due process violation will depend upon the context in which it occurs." <u>Cummings</u> v. <u>McIntire</u>, 271 F.3d 341, 344 (1st Cir. 2001) (quoting <u>Lewis</u>, 523 U.S. at 849) (citations omitted).

Still, "it is also true that the Supreme Court has been firm in its reluctance to expand the doctrine of substantive due process." <u>Maldonado</u>, 568 F.3d at 273 (citing <u>Chavez</u> v. <u>Martinez</u>, 538 U.S. 760, 775 (2003)). As a result, "the official conduct 'most likely to rise to the conscience-shocking level' is 'conduct intended to injure in some way unjustifiable by any government interest.'" <u>Id.</u> (quoting <u>Chavez</u>, 538 U.S. at 775).

From these facts a number of inferences may be drawn in favor of plaintiffs' Fourteenth Amendment claim. The conduct of shooting in the back a participant in a training exercise was certainly likely to injure. It is plausible that no reasonable

government interest in this training exercise justified a police officer taking out a firearm and placing it to the unprotected back of a prone officer, who was face down, motionless, under control, and unarmed. Further, it is plausibly shocking that Santiago, the co-supervisor of the training, did nothing to intervene when Lt. Pacheco placed the gun to Lozada's back.

Moreover, this was done by the highest-ranking supervisor present, as part of a training program. Lt. Pacheco, that supervisor, did not discharge his weapon before entering the facility and did not go through the required checkpoint, in violation of several training protocols. Moreover, Lt. Pacheco said that it was not proper training to merely subdue and control a suspect. Rather, he illustrated "proper" training by using what was obviously lethal force, entirely disproportionate to any reasonable need, in conducting the lesson. The inference can be drawn that the instruction given by Lt. Pacheco as "proper" in this type of situation was shockingly indifferent to the rights of the subdued "suspects." These factual allegations may not prove to be true; but at this stage, all inferences are drawn in the plaintiffs' favor. In short, as to the defendant officers directly involved, Lt. Pacheco and Santiago, the facts are sufficiently pled.

As to the police defendants not present that day, but with direct responsibility for training, the question is closer.

The complaint can, if read generously, be read to say they are not being sued merely because they are supervisors who engaged in no misconduct themselves, but because they each had direct responsibility for the conduct of training exercises and had some active involvement in the structuring of the lethal training exercise that day, and that at least some should have been there that day. Other inferences may also be drawn -- their failure to implement policies, protocols, or correct training about use of live firearms and preventing deaths in such exercises from the police defendants was itself so lacking in justification as to be shocking to the conscience.

This is slightly more than was pled in Soto-Torres v. Fraticelli, 654 F.3d 153 (1st Cir. 2011), and Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592 (1st Cir. 2011), where we found the pleadings insufficient. At this early stage we are reluctant to dismiss. The role of these defendants can be made clearer in discovery and nothing precludes later efforts to end the case against them should discovery not substantiate these inferences.

It takes more than this, though, to assert a § 1983 claim against those who have no personal involvement of any sort in the events, such as the Mayor, and more to assert a claim against the Municipality. The Mayor is not amenable to suit, as pled in the complaint, merely because he is Mayor. Nor may the Municipality be sued under § 1983, as pled, on a respondeat superior theory that it

is liable because it employs the individual defendants.  See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-95 (1978).  Moreover, to state a claim for municipal liability, a plaintiff must plead more than mere insufficiency of a municipality's training program.  "[A] training program must be quite deficient in order for the deliberate indifference standard to be met: the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing."  Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 27 (1st Cir. 2005).

In this case, although the complaint alleges that there were insufficient regulations in place to govern the training exercise, it also describes several safety procedures that were intended to prevent exactly this type of accident.  In particular, it states that: (1) before entering the training area, officers were to discharge their weapons in a sandbox; (2) in the training facility, officers were only to use only "dummy guns"; and (3) at this particular training, no firearms were to be used.  As a result, no plausible claim of municipal liability based on lack of any safety procedures is stated.

The facts as alleged may turn out not to be so.  It may be that this shooting was a horrid accident brought about by the inexplicable actions of one man, Lt. Pacheco.  But we think the Fourteenth Amendment pleadings, as inartful as they are, point to

-11-

sufficiently plausible theories of violation to survive dismissal at this stage, save as to the Mayor and the Municipality.

The dismissal of the Fourteenth Amendment claims against the Mayor and the Municipality is affirmed; dismissal of the Fourteenth Amendment claims as to the remaining defendants is reversed. We affirm dismissal of the Fourth and Eighth Amendment claims as to all defendants. On remand, the district court may wish to reconsider its dismissal without prejudice of the plaintiffs' claims arising under Puerto Rico law against the remaining federal defendants. No costs are awarded.