FISHER, Circuit Judge, concurring. It is undeniable that this tragic death never should have occurred and it is indisputable that defendant Schroeter should have known better than to point a gun at another officer without following proper safety precautions. So at first glance, it is difficult to find fault with the majority’s compelling discussion of why Schroeter’s conduct shocks the conscience. Nonetheless, I file this concurrence to explain my belief that the District Court’s judgment should be reversed on narrower grounds than those on which the majority relies. I. “Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.” Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012). It involves a two-step process, which a court may address in either order. Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The first step “asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer’s conduct violated a federal right.” Tolan v. Cotton, — U.S. —, 134 S.Ct. 1861, 1865, 188 L.Ed.2d 895 (2014) (per curiam) (internal quotation marks and alterations omitted). The second step “asks whether the right in question was clearly established at the time of the violation.” Id. at 1866 (internal quotation marks omitted), The District Court granted Schroeter qualified immunity under the second prong, concluding that it was not clearly established that he could violate a constitutional right without actual knowledge that his actions posed a substantial risk of harm. The majority reverses, concluding that (1) Kedra has pleaded that Schroeter acted with actual knowledge that his actions posed a substantial risk of harm, and (2) the right at issue here was clearly-established. The Supreme Court recently noted' that it “has issued a number of opinions reversing federal courts in qualified immunity cases” over “the last five years.” White v. Pauly, — U.S. —, 137 S.Ct. 548, 551, 196 L.Ed.2d 463 (2017) (per curiam). It has expressed “reluctante] to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.” Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Mindful of these cautionary words, I would limit this decision to the narrowest possible grounds, and would reverse solely because of the allegation that Schroeter pleaded guilty to recklessly endangering another person in Pennsylvania court. I do not believe that the other allegations on which the majority relies are sufficient—separately or together—to state a claim. A. To prove a constitutional violation under the state created danger theory, a plaintiff must establish four elements: that “(1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant’s acts .,.; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.” Sanford v. Stiles, 456 F.3d 298, 304-05 (3d Cir. 2006) (per curiam). In the District Court, the parties agreed that the element at issue is the second one: whether Kedra alleged that SchroeterV conduct shocks the conscience.[1] The Supreme Court has explained that “negligently inflicted hárm is categorically beneath the threshold of constitutional due process,” while “conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.” County of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). “Whether the point of the conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence, is a matter for closer, calls.” Id. (internal quotation marks and citation omitted). This is precisely such a close-call case—which is why we should, as the Supreme Court has advised, be reluctant to expand the concept of substantive due process. Collins, 503 U.S. at 125, 112 S.Ct. 1061. I agree with the majority that here, there was no “hyperpressurized environment” and' “unhurried judgments” were possible. Therefore, the level of culpability required to shock the conscience is deliberate indifference. Sanford, 456 F.3d at 309. We have defined deliberate indifference as falling in the “middle range” identified by the Supreme Court—“between intent, which includes proceeding with knowledge that the harm is substantially certain to occur and negligence, which involves the mere unreasonable risk of harm to another.” Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 910 n.10 (3d Cir. 1997) (internal quotation marks omitted). Since we first adopted the state created danger theory, we have repeatedly left open whether the appropriate standard for evaluating deliberate indifference in a substantive due process case is subjective or objective. See, e.g., Kaucher v. Cnty. of Bucks, 455 F.3d 418, 428 n.5 (3d Cir. 2006); Sanford, 456 F.3d at 309 n.13. In many cases, a subjective standard will be more demanding, requiring the plaintiff to allege specific facts that shed light on the defendant’s mental state, rather than more general notions of what should have been objectively clear. The majority acknowledges that the subjective standard applies here, because it was the standard established in our case law at the time of Trooper Kedra’s death. Nevertheless, the majority goes on to analyze case law post-dating the conduct at issue: Kingsley v. Hendrickson, — U.S. —, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), and L.R. v. School District of Philadelphia, 836 F.3d 235, 246 (3d Cir. 2016), among others. Maj. Op, at 438-39. This discussion is unnecessary to the resolution of the case, and I would therefore avoid it. Because the majority has spoken, though, I feel compelled to note my disagreement. The majority definitively states that we settled the question of whether a subjective or objective standard applies when we observed that the risk of harm from the teacher’s alleged conduct was “ ‘so obvious’ as to rise to the level of deliberate indifference.” L.R., 836 F.3d at 246. In L.R., however, we did not explicitly acknowledge the existence of two possible standards—subjective versus objective—or discuss the differences between them. See id. We did not indicate that we were adopting the objective standard or provide any reason for doing so, which would be., a surprising way of ruling definitively on an issue that has split our sister Circuits. Moreover, the L.R. plaintiff made allegations that would be sufficient under the subjective standard: the teacher asked the stranger for identification, illustrating that he was “indeed aware of the risk of harm” in releasing the child to a stranger. Id. Therefore, L.R.’s less-than-clear allusion to the' objective standard was dicta' that was unnecessary to our resolution of the appeal. The majority’s other eases are no more persuasive. In Kingsley, the Supreme Court held that an,objective standard applied to a § 1983 claim alleging a violation of Fourteenth Amendment substantive due process rights. 135 S.Ct. at 2472. But Kingsley involved an excessive force claim by a pretrial detainee. 135 .S.Ct. at 2470. Although Kingsley and this case both involve Fourteenth Amendment claims, I do not see that prisoner cases, which implicate a host of specialized policy concerns, have much bearing on state created danger cases. The Supreme Court’s reasons for adopting the objective standard included prior case law analyzing pretrial detainee excessive force claims; the objective standard’s congruence with prison guards’ training; and the fact that the objective standard incorporates “deference to policies and practices needed to maintain order and institutional security.” Id. at 2473-75. None of those reasons apply here. Pretrial'detainee eases from our .sister Circuits are similarly unpersuasive. See Darnell v. Pineiro, 849 F.3d 17, 33 (2d Cir. 2017); Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1069 (9th Cir. 2016). Prisoner claims under the Eighth Amendment are even further afield. See Palakovic v. Wetzel, 854 F.3d 209 (3d Cir. 2017). The subjective, standard is the appropriate test for deliberate indifference in a substantive due process case because the Fourteenth Amendment is not a “font of tort law to ,be superimposed upon whatever systems may. already be administered by the States.” Daniels v. Williams, 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (internal quotation marks omit- ■ ted). The subjective standard better aligns with the purposes and limits of § 1983. Kaucher, 455 F.3d at 428 n.5 (an “objective standard” would “move the concept of deliberate indifference ... closer to the pole of negligence”). ' Regardless of my disagreement with the majority’s reading of. cases it acknowledges are unnecessary to its decision here, I agree with the majority that the qualified immunity determination turns' on whether Kedra has pleaded facts from which we can infer that Schroeter acted with actual knowledge or “a ‘conscious disregard of a substantial risk of serious harm.’ ” L.R., 836 F.3d at 246 (quoting Vargas v. City of Phila., 783 F.3d 962, 973-74 (3d Cir. 2015)). And while I appreciate that the lines between intentional conduct, negligence, gross negligence, recklessness, and conscious disregard may be difficult to pinpoint, in a case like this they are critical. Because negligence is not enough to shock the conscience but instead denotes “culpable carelessness,” Negligence, Black’s Law Dictionary (10th ed. 2014), Kedra must allege that Schroeter acted with more than culpable carelessness to have violated the Constitution. Kedra satisfies this burden due to her allegation that Schroeter pleaded guilty in Pennsylvania-court, to reckless endangerment of another person. As the majority notes, by doing so, Schroeter agreed that he “recklessly engage[d] in conduct which placetd] ... another person in danger of death or serious bodily injury.” 18 Pa. Cons. Stat. § 2705. Under Pennsylvania law, “[t]he mens rea for recklessly endangering another person is a conscious disregard of a known risk of death or great bodily harm to another person.” Commonwealth v. Hopkins, 747 A.2d 910, 916 (Pa. Super. Ct. 2000) (internal quotation marks omitted); see also Commonwealth v. Rich, 167 A.3d 157, 162 (Pa. Super. Ct. 2017) (statutory definition provides that “[a] person acts recklessly ... when he consciously disregards a substantial and'unjustifiable risk....”) (quoting 18 Pa. Cons. Stat. § 302(b)(3)). That language closely tracks with what is required for conscience-shocking behavior: “a ‘conscious disregard of a substantial risk of serious harm.’ ” L.R., 836 F.3d at 246 (quoting Vargas, 783 F.3d at 973-74). Therefore, I agree with the majority that Kedra’s allegation that Schroeter pleaded guilty to reckless éndangerment sufficiently alleges that he acted in a way that shocks the conscience. I also agree that the District Court missed the mark when it concluded that the guilty plea allegation is relevant “only if non-mutual offensive collateral estoppel is extended here.” Kedra v. Schroeter, 161 F.Supp.3d 359, 362 n.5 (E.D. Pa. 2016). This case is at the pleading stage, so all that is required is that the guilty plea “nudge[ ]” Kedra’s allegation that Schroeter’s behavior shocks the conscience “across the line from conceivable to plausible.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Because the guilty plea does just that, the complaint adequately alleges what is needed for the first prong of the qualified immunity analysis—namely, that Schroeter’s “conduct violated a federal right,” Tolan, 134 S.Ct. at 1865, and “shocks the conscience,” Sanford, 456 F.3d at 304. In contrast to the majority’s treatment of the guilty pled as one more allegation that saves the complaint, I believe this is where our analysis should end. B. Aside from the guilty plea, the majority also relies- on what it calls circumstantial evidence of conscience-shocking behavior: (1) the .obviousness of the risk of pointing a gun at another person, (2) Schroeter’s professional training, and (3) Schroeter’s violation of safety protocols. I diverge from the majority in my belief that none of those factors adequately allege conduct that shocks the conscience. The “obviousness of a risk is not conclusive.” as to a defendant’s subjective awareness of that risk. Farmer v. Brennan, 511 U.S. 825, 843 n.8, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).[2] So while we “may infer the existence of this subjective state of mind from the fact that the risk is obvious,” Hope v. Pelzer, 536 U.S. 730, 738, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), the obviousness of a risk could also, in an appropriate case, support an inference that there .was. not deliberate indifference. If Schroeter knew he failed to follow the safety procedures, he would have had to know that his gun might be loaded-when he pointed it at Kedra. In other words, in order for the obviousness of the risk to support an inference of deliberate indifference, we would have to infer.that Schroe-ter deliberately chose not to do what was necessary to determine whether the gun was loaded. That may be “possible]” or “conceivable” (for instance, if Schroeter had a mental illness). But in the absence of the guilty plea—through which Schroeter admitted conscious disregard of a known risk—I would not find it “plausible,” as the pleading standard requires. Iqbal, 556 U.S. at 679-80, 129 S.Ct. 1937. Likewise, I do not believe that Schroe-ter’s professional training and violation of safety protocols would adequately allege conscience-shocking behavior in the absence of the guilty pipa. To begin with, those allegations have a temporal problem: under a subjective standard, the relevant inquiry is Schroeter’s state of mind at the time he acted. The fact that he received training beforehand does not mean he remembered it, let alone that he was aware in the moment that he failed to follow it. Second, a failure to follow police protocol is not itself sufficient to establish a constitutional violation. Lewis, 523 U.S. at 855, 118 S.Ct. 1708 (“Regardless whether [the. officer’s] behavior offended the ... balance struck in law enforcement’s own codes of sound practice, it does not shock the conscience ..... ”); City of San Francisco v. Sheehan, — U.S. —, 135 S.Ct. 1765, 1777, 191 L.Ed.2d 856 (2015) (“Even if an officer acts contrary to her training .'.. that does not itself negate qualified immunity where it would otherwise be warranted.”). Most importantly, the majority’s ruling could be read, in the future, to significantly expand the circumstances in which a plaintiff can defeat a claim of qualified immunity. Every public- official receives employment-related rules and trainings, but acknowledging those rules does not itself indicate conscious awareness of the risk of harm on a future occasion. Nor does violating an established rule transform negligence into conscience-shocking behavior. However, in seeming to accord equal weight to Schroeter’s prior training and his guilty plea, I fear the majority continues a trend of reducing the standard of deliberate indifference too close to negligence while also transforming qualified immunity “from a guarantee of immunity into a rule of pleading.” Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). And in transforming qualified immunity into a rule of .pleading, our approach risks “destroy[ing] • the balance that our cases strike between the interests in vindication of citizens’ constitutional rights and in public officials’ effective performance of their duties.” Id. (internal quotation marks omitted). In short, after scrutinizing the entire complaint, I conclude that aside from Schroeter’s guilty plea to reckless endangerment, the remaining allegations in Ke-dra’s complaint make out only a strong case of negligence. I do not believe they would be sufficient, by themselves, to state a claim that Schroeter acted with the deliberate indifference required to shock the conscience. C. To summarize, Kedra adequately pleaded deliberate indifference, and therefore she alleged all four required elements of a state created danger claim. Sanford, 456 F.3d at 304-05. Having adequately pleaded her constitutional claim, Kedra has met the first requirement of the qualified immunity analysis: conduct by an officer that violates a federal right. Tolan, 134 S.Ct. at 1865 (2014). I arrive, then, at the second element that must be shown in order to defeat Schroeter’s claim of qualified immunity: that “the right in question was clearly established at the time of the violation.” Id. at 1866. I agree with the majority’s conclusion that the right at issue in this case was clearly established—but again, based on different reasoning. To be clearly established under qualified immunity’s second prong, “a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right.” Reichle, 132 S.Ct. at 2093 (internal quotation marks and alterations omitted). “This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.” Anderson, 483 U.S. at 640, 107 S.Ct. 3034 (internal citation omitted). “[A] case' directly on point” is not required, “but existing precedent must have placed the ... constitutional question beyond debate.” Ashcroft v. al-Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011); see also Hope, 536 U.S. at 741, 122 S.Ct. 2508 (“we [have] expressly rejected a requirement that previous cases be fundamentally similar” or “materially similar”) (internal quotation marks and citation omitted). The touchstone is reasonableness: “[qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law.” al-Kidd, 563 U.S. at 743, 131 S.Ct. 2074 (internal quotation marks omitted). As the Supreme Court has explained, “the operation of this standard”—that is, whether a right is clearly established— “depends substantially upon the level of generality at which the relevant legal rule is to be identified.” Anderson, 483 U.S. at 639, 107 S.Ct. 3034 (internal quotation marks omitted). Therefore, the Court has repeatedly instructed us “not to define clearly established law at a high level of generality,” that “[t]he dispositive question is whether the violative nature of -particular conduct is, clearly established,” and that our inquiry into the clearly established prong “must be undertaken in light of the specific context of the case, not Ms a broad general proposition.” Mullenix v. Luna, — U.S. —, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotation marks omitted). The majority defines the right at issue here as “an individual’s right not to be subjected, defenseless, to a police officer’s demonstration of the use of deadly force in a manner contrary to all applicable safety protocols.” Maj. Op. at 449.1 would define the right more narrowly, and in accordance with my analysis of the first’ qualified immunity prong in Section I.A., asi a police officer’s right not to be subjected to a firearms training in which the instructor acts with deliberate indifference, that is, consciously disregards a known risk' of death or great bodily harm. Schroeter’s admitted deliberate indifference is crucial, in my opinion, to the conclusion at the first step of the analysis that a right was violated. See supra Section I.A., B. Therefore, in order to narrowly define the right in light of the particular conduct at issue, Mullenix, 136 S.Ct. at 308, I would include deliberate indifference in the definition. The majority disagrees with this definition of the right, saying that it conflates the first and second elements of the qualified immunity analysis. Maj. ,Op. at 449 n.19.1 am not the first, however, to include a state of mind in the definition of a right. See Grandstaff v. City of Borger, 767 F.2d 161, 167-68 (5th Cir. 1985) (holding it was clearly, established that the use of “deadly force, in,conscious disregard of substantial risk of harm to innocent parties,” was a constitutional due process violation). Nor .is it troublesome, as a general proposition, that one element of .a legal test overlaps with another element of the same or a related test. Indeed, the firsjt requirement for defeating qualified immunity is redundant with the four prongs of a state created danger claim, and there is no shortage of other.examples.[3] Given the unique facts of this case— namely, Schroeter’s guilty plea—-I believe •it is appropriate to tether the right in question to the standard of care he admitted he breached. The majority’s approach, by contrast, suffers from'its focus on the violation of “all applicable safety protocols,” which will inevitably lead to disputes over how many safety protocols' need to be violated for qualified immunity to be.forfeited. And those disputes, I predict, will devolve into a negligence-type analysis, which precedent clearly forbids. The majority’s definition of the right could prove fertile ground for future plaintiffs seeking to lower the bar yet further in § 1983 cases. Turning to whether the right as I define it was clearly established, I conclude that in light of existing case law, a reasonable person could not have believed that it was consistent with Kedra’s substantive due process rights to subject him to a firearms training at which the instructor was deliberately indifferent to his safety. Therefore, the right was clearly established. Unlike the majority, I do not read existing cases as being “fundamentally” or “materially” similar to this one. See Hope, 536 U.S. at 741, 122 S.Ct. 2508. The lack of on-point precedent gives me pause, because a case’s “preseritfetion] [of] a unique set of facts and circumstances” can be “an important indication” that the conduct at issue “did not violate a clearly established right.” White, 137 S.Ct. at 552 (internal quotation marks omitted). Nonetheless, I feel constrained to conclude that Supreme Court and Circuit precedents have “clearly established” the “violative nature,” Mullenix, 136 S.Ct. at 308, of conducting a firearms training with deliberate indifference to a known risk. . To begin with, the deliberate indifference standard was clearly enunciated in the state created danger context more than a decadé ago and was clear at the time of Kedra’s death in 2014. Sanford, 456 F.3d at 309 (ruling that “where deliberation is possible and officials have the time to make unhurried judgments, deliberate indifference is sufficient” to shock the conscience); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 241 (3d Cir. 2008). While our state created danger cases are not factually similar to this one— they do not involve police officers conducting firearms training—I cannot see how any reasonable official could believe that acting with deliberate indifference in the police firearms training context would.be consistent with trainees’ constitutional rights. A reasonable officer could not be heard to say that although he knew that 911 employees cannot release information from their database in a deliberately indifferent manner,, id. at 243, he nevertheless thought it would, comport with trainees’ substantive due process rights to conduct a firearms training with deliberate indifference. We have reasoned, in the past, that deliberate indifference is simply inconsistent with objectively reasonable conduct. Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001) (reasonable defendant “could not believe that her actions comported with clearly established law while also believing that there is an excessive risk to the plaintiffs and failing to adequately respond to that risk[;] [cjonduct that is deliberately indifferent to an excessive risk ... cannot be objectively reasonable conduct”); Carter v. City of Phila., 181 F.3d 339, 356 (3d Cir. 1999) (“If Carter succeeds in establishing that the ... defendants acted with deliberate indifference to constitutional rights—as Carter must in order to recover under section 1983—then a fortiori their conduct was not objectively reasonable.”). The majority emphasizes the importance of Marrero-Rodriguez v. San Juan, 677 F.3d 497 (ist Cir. 2012), to its conclusion that the right at issue here was clearly established. Maj. Op. at 450-51. Marrero-Rodriguez involves a police trainer’s deliberate indifference toward, a trainee, 677 F.3d at 502, but the case has important distinctions as well. There, “dummy guns” were supposed to be used, id. at 500, while here, Schroeter needed to use an actual gun in order to train the other officers on its features. Also in Marrero-Rodriguez, what the instructor was supposedly “training” the other officers to' do would have itself amounted to a gross violation of the rights of criminal suspects. Id. at 502, There are no such allegations here. The majority dismisses the materially differing facts in Marrero-Rodriguez as a distinction without a difference. But the fact that the instructor there brought a' real gun to ■ a .training meant .to involye dummy weapons injected a level of danger into the training that never would have existed absent that deliberate act. Here, the training required a live weapon, so the inherent risk was of a different order than the risk involved in the Marrero-Rodri-guez training. Kedra does not allege that Sehroeter’s conduct was anything other than a mistake, however reckless. The same cannot be said for the instructor in Marrero-Rodriguez, and that should make a difference. Regardless, as I explain above, the Supreme Court’s and our court’s precedents clearly establish the right in question, even in the absence of directly on-point precedent. It is therefore immaterial whether Marrero-Rodriguez may have also put Schroeter on notice that his conduct was violative of that right. II. I am concerned by the impact that the breadth of the majority’s decision could have on the law of qualified immunity. I am equally troubled by the recent trajectory of this Court’s jurisprudence. In my mind, we have gradually expandéd substantive due process protections to cases where they should not apply by tortifying the Constitution and chipping away at the standards necessary to show deliberate indifference. The Due Process Clause of the Fourteenth Amendment provides that “[n]o State shall ... deprive any person of life, liberty, or property without due process of law.” U.S. Const. amend. XIV, § 1, cl. 2. Shortly after the Fourteenth Amendment’s adoption, the Supreme Court analyzed the meaning of the Due Process Clause and stated that the Clause was “intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice.” Hurtado v. California, 110 U.S. 516, 527, 4 S.Ct. 292, 28 L.Ed. 232 (1884) (quoting Bank of Columbia v. Okely, 17 U.S. (4 Wheat.) 235, 244, 4 L.Ed. 559 (1819)). Since then, the Supreme Court has explained that “the Due Process Clause of the Fourteenth Amendment was intended to prevent the government from abusing its power,” DeShaney v. Winnebago Cnty. Dep’t of Soc. Servs., 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (internal quotation marks and alterations omitted), but not to “transform every tort committed by a state actor into a constitutional violation.” Id. at 202, 109 S.Ct. 998; see also Lewis, 523 U.S. at 845, 118 S.Ct. 1708 (“We have emphasized time and again that the touchstone of due process is protection of the individual against arbitrary action of government.”) • (internal quotation marks omitted). The Supreme Court has accordingly “emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense.” Id. at 846, 118 S.Ct. 1708 (internal quotation marks omitted). In assessing what behavior is egregious enough to state a claim under the Due Process Clause, the Supreme Court has “spoken of the cognizable level of executive abuse of power as that which shocks the conscience” or “violates the ‘decencies of civilized conduct.’ ” Id. In so doing, it has recognized that the Due Process Clause is “phrased as a limitation on the State’s power to act, not as a guarantee of certain minimal levels of safety.” DeShaney, 489 U.S. at 195, 109 S.Ct. 998. But it has also recognized some limited exception to that rule. In DeShaney, the Supreme Court noted that “when the State takes a person into custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.” Id. at 199-200, 109 S.Ct. 998. DeShaney also left open the question of whether a constitutional violation could occur absent a custodial relationship when it stated: “[w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it render him any more vulnerable to them.” Id. at 201, 109 S.Ct. 998. Relying on that dicta in DeShaney, several Circuits recognized a state created danger theory for establishing a constitutional claim under § 1983, and we joined them in Kneipp v. Tedder, 95 F.3d 1199 (3d Cir. 1996). The Supreme Court has yet to explicitly adopt the now widely-recognized state created danger theory, and the Circuits have yet to enforce a uniform approach to its application. But consistent with the fact that the Due Process Clause was not meant to constitutionalize state tort law, our state created danger theory encompasses four elements that provide some insurance that it protects the individual only from those abuses of power that lie at the heart of the concept of due process. Since “liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process,” Lewis, 523 U.S. at 849, 118 S.Ct. 1708, the requirement that the government official act with a degree of culpability that shocks the conscience is perhaps the most critical element to providing that insurance. And recognizing the importance of the culpability requirement, our cases have frequently sought to evaluate the degree of culpability required to prevail under our state created danger theory. Unfortunately, because the rules of substantive due process are not “subject to mechanical application in unfamiliar territory,” id. at 850, 118 S.Ct. 1708, we have, like the Supreme Court, struggled with how to define culpability falling between the intentional conduct that can sustain a due process violation and the negligent conduct that cannot. In this regard, the Supreme Court has offered that recklessness or gross negligence may be actionable in some cases, but the only case the Lewis court cited as establishing liability in that middle range, City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983), involved a pre-trial detainee who was in government custody and therefore restrained from acting on his own behalf. Because “when the State takes a person into custody” it renders him unable to exercise ordinary responsibility for his own welfare, such cases implicate a unique context where “the Constitution imposes upon [the State] a ... duty to assume some responsibility for [that person’s] safety and general well-being.” Deshaney, 489 U.S. at 199-200, 109 S.Ct. 998. And consequently, Justices Scalia and Thomas have asserted that the Supreme Court has “expressly left open whether, in a context in which the individual has not been deprived of the ability to care for himself in the relevant respect, something' less than intentional conduct, such as recklessness or gross negligence, can ever constitute a deprivation under the Due Process Clause.” Lewis, 523 U.S. at 863, 118 S.Ct. 1708 (Scalia, J., concurring in the judgment) (internal quotation marks omitted). Despite the fact that the Supreme Court left this question open, we have recognized such liability by defining deliberate indifference as “appearing] to fall somewhere between intent, which includes proceeding with knowledge that the harm is substantially certain to occur and negligence, which involves the mere unreasonable risk of harm to another.” Morse, 132 F.3d at 910 n.10 (internal quotation marks omitted). I question the validity of this definition. Gross negligence and recklessness are cognizable under state tort law, and the Supreme Court has “rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those, traditionally imposed by state tort law.” Collins, 503 U.S at 128, 112 S.Ct. 1061; see also Kingsley v. Hendrickson, —- U.S. --, 135 S.Ct. 2466, 2479, 192 L.Ed.2d 416 (2015) (Scalia, J,, dissenting). In my view, it is troubling how' far we have expanded substantive due process, a concept the Supreme Court has been reluctant to expand. Collins, 503 U.S. at 125, 112 S.Ct. 1061, Originally, the Due Process Clause prevented only those government actions that violate “those canons of decency and fairness which express the notions of 'justice of English-speaking peoples.” Rochin v. California, 342 U.S. 165, 169, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (internal quotation marks omitted). We took a second step by fashioning a state created danger theory, Kneipp, 95 F.3d at 1211. We then took a third step, stating that there could be liability in non-custodial situations for gross negligence. See, e.g., Sanford, 456 F.3d at 310. The Supreme Court, however, is still at step one. Given that our substantive due process doctrine has gradually lowered the bar for bringing a state created danger claim, it may be time for this full Court to reexamine the doctrine. 1—f h-i Perhaps the full Court will revisit the qualified immunity framework to reexamine whether it is consistent Svith the history of the Due Process Clause. Perhaps the Supreme Court will clarify the governing law by weighing in on the state created danger theory before we expand this substantive due process doctrine even further. In the meantime, it is worth remembering: The people .., may well prefer a system of liability which would place upon the State and its officials the responsibility for failure to act in situations such as the present one. They may create such a system, if they do not have it already, by changing the tort law of the State in accordance- with, the regular..lawmaking process. But they should not have it thrust upon them by this Court’s expansion of the Due Process Clause- of the Fourteenth Amendment. DeShaney, 489 U.S. at 203, 109 S.Ct. 998. I offer this concurrence in the hope that it might steer us toward a firmer commitment to this principle. . The majority offers an interpretation under which Farmer, as applied, at the pleading stage, means the opposite of what it says—• namely, that the obviousness of a risk is, in fact, conclusive. Maj. Op. at 445-46 n.16. However, that interpretation is built on the premise that Farmer holds that the obviousness of risk alone could support liability. Id. That is incorrect. Farmer posits that liability could be premised on what might be called obviousness-plus: evidence that a "substantial” risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past.” 511 U.S. at 842, 114 S.Ct. 1970 (internal quotation marks and citation omitted). Therefore, Farmer.does not say or signify that obviousness of a risk alone is sufficient to survive a motion to dismiss. In any event, my analysis of Farmer is simpler than the majority’s; I take it to mean what it says. . See, e.g., Kosilek v. Spencer, 774 F.3d 63, 83 (1st Cir. 2014) (“[W]e have recognized that thé subjective deliberate indifference inquiry may overlap with the objective serious medical need determination,,..”); Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158 n.13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("The commonality and typicality requirements of [Federal Rule of Civil Procedure] 23(a) tend to merge,” and both "also tend to merge with the adequacy-of-representation requirement. ... ”).